KEVIN FAY *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

First District (2nd Division)   No. 77-1732

Opinion filed May 1, 1979.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Henry Phillip Gruss, Assistant Corporation counsel, of counsel), for appellant.

Zulkey, Pikarski & Gottlick, of Chicago (Richard E. Zulkey, John J. Pikarski, and John P. Coleman, of counsel), for appellees.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

The City of Chicago appeals from a judgment of the Cook County circuit court declaring invalid the City's R3 General Residence District zoning classification as applied to plaintiffs' property, and permitting the construction of a nine-unit apartment building thereon. For the reasons stated below we affirm.

Plaintiffs purchased the subject property in July 1976 for $46,000, a sum which they knew at the time of purchase exceeded the value of the property as zoned by $9,000. The present action was commenced by plaintiffs approximately one month after they purchased the property. The use proposed by plaintiffs is a three-story building to contain six two-bedroom and three one-bedroom apartment units. The property measures 50 feet by 175 feet, containing 8,750 square feet. The proposed building would possess a density of 972 square feet per dwelling unit, thereby falling within the R4 General Residence District classification, which permits not less than 900 square feet per dwelling unit, but contrary to the R3 zoning restrictions which permit not less than 1,650 square feet per dwelling unit at this location. Both the R3 and R4 General Residence classifications of the City permit multiple-family units to be constructed, the primary difference being one of density rather than type of use.

The subject property at the time of purchase was improved with an 80-year-old frame, single-family residence. It is situated at 5989 N. Northwest Highway, on the north side of the street, between Naper Avenue to the east and Neola Avenue to the west. Northwest Highway has been classified as a "major diagonal street" by the Chicago Zoning Ordinance. (Municipal Code of Chicago, ch. 194A, §7.5—3, as amended Jan. 1, 1977.) The other uses located in the tier of properties on the north side of Northwest Highway in the aforesaid block, starting from Neola and moving eastward include: a single-family residence at the corner; a six-unit apartment building with a density of 1,458 square feet, consistent with R4 zoning; the subject property; a five-unit apartment building containing 1,750 square feet per dwelling unit, which conforms to R3 zoning; a two-flat permissible in an R3 district; a nine-unit apartment building containing 972 square feet of lot area per dwelling unit, which conforms to R4 zoning, made possible by a 1971 declaratory judgment from which the City did not appeal; four single-family residences facing Northwest Highway; and four single-family residences facing Naper Avenue, the right side of the most southerly such building, with its garage, parallel to Northwest Highway. This latter building bears a Naper Avenue address. All the foregoing properties have been included within an R3 General Residence District. Directly to the north of and abutting these properties, facing north on Navarre Avenue, are single-family residences, except for an eight-unit apartment building two lots to the east of the subject property with a density of 1,093 square feet, directly to the east of which is another apartment building containing 14 dwelling units with a density of 1,250 square feet per dwelling unit, each of which conforms to the R4 zoning classification. These single and multiple-family uses are situated within an R2 Single-Family Residence District.

In the block directly east of that containing the subject property, on

the north side of Northwest Highway, commencing at Naper Avenue and moving eastward to the next intersecting street, Nashotan Avenue, the following uses have been established: a 14-unit apartment building at the corner, constructed at a density of 589 square feet per dwelling unit, consonant with C1-3 Restricted Commercial District requirements, which are comparable to R5 General Residence District restrictions; a tavern; a lot for which the construction of an apartment building with a density in harmony with R4 zoning restrictions was approved in a 1977 declaratory judgment action, from which the City did not appeal; a 47-unit apartment building constructed at a density of 333 square feet per dwelling unit, permissible in a C1-4 Restricted Commercial District, which is comparable to the R6 General Residence District classification; a single-family residence; and mixed commercial uses. The property in this block is zoned C1-1 Restricted Commercial District, which permits residential uses to be established with not less than 1,650 square feet of lot area per dwelling unit on such a major diagonal street.

In the block to the west of that containing the subject property, between Neola on the east and Nettleton on the west, the following property uses on the north side of Northwest Highway are established from Neola westward: a large three-story structure occupied by Illinois Bell Telephone Company; a real estate office; a church, an American Legion Hall; a single-family residence; a sport shop; a retail store; and two 11-unit apartment buildings, each containing a density of 795 square feet per dwelling unit, permissible in a B4-3 Restricted Service District, which is comparable to the R5 General Residence District. This block bears a zoning classification of B4-1 Restricted Service District, which permits residential uses to be established with not less than 1,650 square feet of lot area per dwelling unit at this location.

In the block directly across Northwest highway from the last described block between Neola and Nettleton, on the south side of Northwest Highway, the following uses are established, moving eastward from Nettleton: a gasoline service station; an animal hospital; a printing establishment; a warehousing establishment and a machine shop, all contained within a C1-1 Restricted Commercial District, which terminates at Neola Avenue. Moving further eastward there are a variety of commercial and manufacturing uses through Nashotan Avenue, with a plastics factory facing the subject property, all contained within an M1-1 Restricted Manufacturing District.

Plaintiff Kevin Fay, a builder, testified that in his experience as a builder, the value of the land per unit in the subject location was $7,000. He and his wife purchased the property for $46,000. The construction cost of a five-unit building permitted under the present zoning would be $24,000 per unit or $120,000 for a five-flat; adding the purchase price

would result in a total cost of $166,000. The sale price of a five-flat at that location would be $30,000 per unit or $150,000, so that he would lose $16,000 if so limited. If permitted to construct a nine-flat, the cost per unit would be $22,000 or $198,000 for the building with a total expenditure of $244,000. The sale price of such a nine-flat would be $270,000, yielding a profit of $26,000.

When they purchased the property, Fay first checked with counsel as to zoning and examined the surrounding neighborhood. He saw buildings constructed on the same sized lots with nine units, which is what he proposes to build. He knew at the time of purchase that the property was zoned R3 General Residence District, which would not permit the use he sought. After talking to counsel and being advised that there was a calculated risk, he believed he had a good chance to secure the zoning change. There was no provision in the purchase contract permitting him to rescind the sale if he could not construct the proposed use.

Four expert witnesses testified with respect to the zoning and real estate considerations involved. For plaintiffs, Thomas J. Buckley, a city planning and zoning consultant, described the uses and zoning essentially as set forth in the foregoing paragraphs. He was familiar with the area both through his four or five inspections at the subject site and also because he was a resident of that community for a number of years. In his opinion the highest and best use of the subject property was for the proposed nine-unit apartment building based upon the physical characteristics of the property, the adaptability of the proposed use in terms of access and topography, its compatibility with existing uses in the immediately surrounding and contiguous area and its being in concert with the development trend in the area. In terms of size and configuration, the subject property is exactly the same as that located two lots to the east where a declaratory judgment order issued by the circuit court permitted a nine-unit apartment building to be constructed. There would be no substantial injury to the surrounding neighborhood if the use proposed were to be built; the neighborhood would benefit from the removal of the existing use. The newest construction in the area is a multiple-dwelling unit developed within the permissible R4 density.

Francis Lorenz, Jr., a real estate appraiser and broker, also testified on plaintiffs' behalf. He was familiar with the subject site and its environment both by virtue of his residency in the community as well as his several inspections of the subject property. In his opinion the highest and best use for the subject property would be the proposed nine-flat considering the greatest net return to the owner over a period of time, and uses and development on nearby properties, the trend of development in the area, the sales of homes and apartment buildings therein and the transportation availability in the neighborhood, with a bus stop located

virtually in front of the subject property. The fair cash market value of the subject site as presently zoned was $35,000 but if the proposed use was allowed, its value would rise to $63,000. There would be no substantial injury to the neighborhood in the vicinity of the subject site, rather an enhancement of other property would result. There is a need for the proposed use because all the apartments presently existing in the area are fully occupied. Under the present zoning the owner could build a five-unit apartment building on the site.

For the City of Chicago, Richard McKinnon, a city planner, testified. He was familiar with the subject site. In his opinion the proper zoning of the area is R3 General Residence District based upon the fact that a majority of the buildings conform to that zoning and upon the character of the interior residential neighborhood to the north of the subject property, which is zoned R2. The proper gradation between zoning districts is one zone level higher. The use of streets as boundary lines is normal and reasonable. The approximate ages of the frame building single-family homes in the area are 80 years, with some 60 years. Many of the existing multiple-family uses were constructed prior to the adoption of the ordinance which made them nonconforming. In determining the highest and best use, it is proper to consider new construction; all the new construction in the area has been of a higher density multiple-dwelling type. The development trend has been for R4 General Residence District property uses. The fact that nonconforming uses exceeding the present R3 density exist is not an appropriate basis for changing the zoning classification. The entire area has been developed with mixed land uses.

John McNamara, a real estate broker and appraiser, also testified on behalf of the city. He was familiar with the subject property; its development with a five-unit apartment building would be allowed under the present R3 zoning. In his opinion, the value of the property as presently zoned is $35,000, but if plaintiffs were successful in securing the right to build a nine-unit building, the value of the lot would rise to $63,000. The character of the block on which the subject property is located is diversified residential, including mostly single-family dwellings and some multiple apartment buildings. The subject property could be economically developed under the R3 zoning restrictions, which is its highest and best use. The property owner could undertake a development permitted under the present zoning and could economically construct a use permitted thereunder.

The rules governing the disposition of zoning cases are well established. Zoning is primarily a legislative function. One who attacks the validity of such an ordinance has the burden of overcoming with clear and convincing evidence the presumptive constitutionality of the enactment; however, every owner has the right to use his property in his own

way, subject only to the restraint necessary to protect the public health, safety, morals or general welfare. The power of a city or village to interfere with property rights by means of such an ordinance will be upheld when it has a real and substantial relationship to the common welfare. The foregoing principles have been repeated in the many zoning cases which have been decided by the reviewing courts of this State. See, *e.g., Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 70-71, 182 N.E.2d 722; *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 949, 369 N.E.2d 1363; *First National Bank v. County of Cook* (1977), 46 Ill. App. 3d 677, 683, 360 N.E.2d 1377.

Equally familiar are the factors recognized by the reviewing courts to be considered with respect to determining the validity of a zoning ordinance as applied to particular property. They are set forth comprehensively in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65 (see also *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 180-81, 354 N.E.2d 899; *Kluse v. City of Calumet City* (1977), 55 Ill. App. 3d 403, 405, 371 N.E.2d 61), and have been so often repeated that we need only discuss the considerations stated therein which are relevant to the case on review.

Although no single standard is determinative and every decision must depend upon the particular facts of each case, of paramount importance is the factor relating to the existing uses and zoning of nearby properties. (*Kluse v. City of Calumet City* (1977), 55 Ill. App. 3d 403, 406; *Fairfield Savings & Loan Association v. City of Chicago* (1976), 45 Ill. App. 3d 266, 359 N.E.2d 1040.) Evidence presented in the instant case with respect to this point reveals that the R3 zoning classification which applies to the tier of properties adjacent to and nearby the subject property has already been disregarded in several instances. On the property directly west of the subject property there is a six-unit apartment building which contains a density of use consistent with R4, rather than R3 zoning, and two lots to the east, there is a nine-unit apartment building identical to that proposed by plaintiff in the instant case, also conforming to the R4 density, established through a declaratory judgment from which the city took no appeal. In the tier of properties zoned R2, directly north and two lots to the east of the subject property, are two more multiple-family dwellings, each of which conform to the R4 General Residence restrictions, and are consonant with the use plaintiffs seek to construct in the instant case. Although it is true, as the city points out, that single-family dwellings facing Northwest Highway have been established for most of the balance of the block, almost half of them face the residential street, Naper Avenue, rather than Northwest Highway, a major city thoroughfare. It

clearly appears from the foregoing that whatever detrimental impact might be expected from the interposition of the proposed use on other properties in the block has already taken place. The foregoing, when considered together with the establishment of other higher density uses in the area located within the business, commercial and manufacturing zones which bracket the block containing the subject property, demonstrate the absence of a reasonably uniform use and zoning pattern requisite to demonstrating a substantial relationship to the public health, safety, morals and welfare.

The city argues that adjacent and abutting property owners have the right to rely upon the existing zoning restrictions; however, there is no evidence in the record that the proposed use would be detrimental to any of the interests of the neighboring properties or property owners. On the contrary, testimony offered by plaintiffs to the effect that the proposed use would both fill the need of the community and enhance the neighborhood was uncontroverted. It is also somewhat significant in this regard that no property owners appeared to testify in opposition to the proposed use. *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 952.
■■ The city asserts that because the nonconforming uses are few in number when compared with those which conform to the assigned zoning, the suggested trend of development to R4 densities is unsupportable; however, one of its own expert witnesses recognized that trend of development, and considered it important in arriving at any conclusion of highest and best use. Further, plaintiffs' expert witnesses testified that in consideration of the mixed uses which have concededly been established in the surrounding area, the compatability of the proposed use with existing improvements, and the absence of injury and the benefit which would be anticipated by virtue of the proposed use, the highest and best use for the subject property would be for a nine-unit apartment building. The city's expert witnesses disagreed, having testified that the highest and best use was for an R3 improvement; however, this conflict in the evidence is not necessarily determinative of the issue of validity, inasmuch as opinions customarily differ in zoning cases, a circumstance which does not require a finding that plaintiffs' proof in this aspect of the case has failed. (*Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 113, 324 N.E.2d 406.) This is particularly true in a case such as this, in view of the mixed uses and zoning presently established in the area, the total absence of any evidence that the proposed use would be detrimental to property values or any other object traditionally protected by the police power, and the compatibility of the proposed use with those already there situated. We are not dealing here with a change in the character of the property use permissible, since both

R3 and R4 General Residence District classifications would permit multiple-family apartment dwellings to be constructed; rather, the issue is focused upon the permissible density of such a use.

The evidence shows that plaintiff would sustain economic injury not only by losing the anticipated profit from the proposed improvement, but also in having paid more for the property than what its value would be under present zoning, factors which must also be considered. The city correctly contends that although the property would be worth more if plaintiffs were free to develop it in the way they wish, this is not determinative of the validity of the ordinance since in almost any zoning case where density increases, the subject property's value concomitantly increases. Further, the city asserts, this proposition is particularly apt in the present case because any financial disadvantages which may be sustained by plaintiffs were self-created by virtue of plaintiffs' purchase of the subject property with knowledge of its zoning and permissible uses, citing *Meyer Material Co. v. County of Will* (1977), 51 Ill. App. 3d 821, 366 N.E.2d 1149; *Guaranty Bank & Trust Co. v. Village of Lombard* (1968), 93 Ill. App. 2d 467, 236 N.E.2d 339; and *Gedmin v. City of Chicago* (1967), 88 Ill. App. 2d 294, 232 N.E.2d 573. Where, as here, there is no reasonable basis in the public welfare requiring the limitation or restriction, however, even a self-inflicted economic loss may properly be considered. *Cohen v. City of Des Plaines* (1975), 30 Ill. App. 3d 918, 333 N.E.2d 513.

Those who purchase property with knowledge of existing zoning restrictions occupy an unfavorable position in challenging the validity of these limitations; however, a property owner may prevail where, as in the instant case, there is no gain to the public as compared with the economic detriment that will be sustained if the restriction were to apply (*La Salle National Bank v. City of Evanston* (1962), 24 Ill. 2d 59, 64, 179 N.E.2d 673). This is especially true when there is no evidence that the values of the surrounding properties will be affected by the proposed use. *Myers v. City of Elmhurst* (1958), 12 Ill. 2d 537, 546-47, 147 N.E.2d 300.

For the foregoing reasons the judgment of the circuit court must be affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.