CECH BUILDERS, INC., *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF WESTMONT, Defendant-Appellant.

Second District   No. 82—790

Opinion filed October 5, 1983.—Rehearing denied November 21, 1983.

Kenneth T. Kubiesa, of Borla & Kubiesa, of Westmont, for appellant.

Frank J. Petru, of Wheaton, for appellees.

JUSTICE VAN DEUSEN delivered the opinion of the court:
Defendant, village of Westmont, appeals from an order of the trial court that the village's zoning ordinance as applied to the plaintiffs' property was unconstitutional and void, that plaintiffs could develop

the subject property as depicted on either of two plans, that the village was restrained from maintaining any court action to block such development, and that the village was required to issue all necessary permits for such development upon application and compliance with all ordinances and regulations other than the zoning ordinance. Among other grounds it raises on appeal, the village of Westmont contends that the plaintiffs did not sustain their burden of proving by clear and convincing evidence that the zoning classification as applied to the subject property was arbitrary, capricious, and bore no relationship to the public safety, morals and welfare, and further, that plaintiffs have also failed to prove by clear and convincing evidence that the proposed uses are reasonable.

We agree and reverse.

■ ■ A zoning ordinance is presumptively valid; this presumption may be overcome only by clear and convincing evidence, and the burden of proof is on the plaintiff. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.) To sustain the validity of a zoning classification, it must bear a substantial relation to the public health, safety, comfort, morals or general welfare, and its validity as applied to a specific piece of property depends on the sum total of the particular facts found in each case. *Fiore v. City of Highland Park* (1966), 76 Ill. App. 2d 62, 71, 73.

■ The zoning function is primarily in the province of the municipal body, and Westmont correctly observes that, where there is room for a legitimate difference of opinion concerning reasonableness of an ordinance governing the use of private property or where such question of reasonableness is fairly debatable, the courts will not interfere with the legislative judgment. (*Trust Co. v. City of Chicago* (1951), 408 Ill. 91, 98-99; see *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428.) However, a mere conflict of testimony does not create an irrebuttable presumption that an ordinance is valid or require a finding that the reasonableness of the ordinance is debatable; such conflicts go to the credibility of witnesses and the weight to be afforded their testimony. These are matters to be determined by the trier of fact, subject to reversal only when against the manifest weight of the evidence. *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53-54.

■ *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, sets out six factors that may be taken into consideration in making a determination on the validity of an ordinance.

The first factor is the existing uses and zoning of nearby property. The subject property is presently zoned R-3, single-family residential.

It is rectangular in shape and consists of approximately four acres. The southern half is bisected by a stream flowing in a generally northern direction. It appears to have been the westerly portion of a larger tract of land, now known as Newfield Manor, that had been developed by plaintiffs Cech and Flavell for single-family residential use.

The immediately surrounding area is single-family residential, somewhat mixed with vacant areas. Immediately west of the subject property and south are a golf course and a park, also zoned R-3 single-family residential. The only multiple-family use, such as that proposed by plaintiffs, is King Arthur Apartments, and it is off the northwest corner of the property. Access to King Arthur Apartments is from a northern direction, and residents of Newfield Manor testified that they have no contact with these apartment residents. Other than King Arthur Apartments, the only uses other than single-family residential are at least one-half mile away, and the park and golf course and Newfield Manor appear to naturally buffer this tract from other uses. While the testimony of witnesses for each side concerning the character of the area varied almost predictably, the area in which the subject property is located can most accurately be characterized as single-family residential, which is the present zoning of the subject property.

The second *La Salle* factor is the extent to which property values are diminished by the particular zoning restriction. Plaintiffs insist that the property as zoned is virtually worthless because of the high costs of improvements to make it possible to develop it for zoned purposes. The only evidence of current value of the property was Peter J. Cech's testimony that he contracted to purchase the 3.9 acres from his father's company for $18,000 and defendant's real estate appraiser's testimony that the property as zoned is worth $75,000. There is no evidence of the value of the property if rezoned. There is predictable dispute about the effect on surrounding property values if the property is rezoned. Several of defendant's witnesses say that either plan will have deleterious effects, and plaintiffs' expert real estate appraiser stated that, while the first plan might cause a 2-5% depreciation, the second plan would cause no such depreciation, although his opinion was largely dependent on landscaping not shown in the plans or required by the court order.

The next two factors to be considered are closely related. They are the extent to which the destruction of property values of the plaintiff promotes the health, safety, morals, or general welfare of the public and the relative gain to the public as opposed to the hardship to the individual property owner. Again, plaintiffs insist that the hard-

ship on them is enormous because the cost of improvements required would put the cost of single-family homes on the property out of the market and that the gain to the public by retaining the current zoning is minute, especially compared to the benefit of increased tax revenue from development as proposed, so that there is no valid basis for the current restrictions. See generally *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 308-09.

■ It is well established that a party who, like plaintiff Cech, acquires the property with knowledge of the present zoning but with the expectation of using it for a purpose not permissible thereunder cannot expect loss resulting from the denial of the change to be a persuasive argument in securing the change. (*E.g., Lapkus Builders, Inc. v. City of Chicago* (1964), 30 Ill. 2d 304, 310.) Moreover, traffic problems would result from both plans, reconstruction of the creek under both plans would increase its depth and velocity creating a hazard to nearby residents and users of the park, and the first plan would diminish nearby property values 2-5% and create traffic hazards for Newfield Manor residents. Therefore, it appears that the development under either plan would have a negative effect on the public health, safety and welfare.

The next factor is the suitability of the subject property for zoned purposes. The experts' testimony once again varied predictably on this subject. The plaintiffs' witnesses found the property unsuitable for single-family residential development, while defendant's witnesses found it suitable. Basically, it was established that the cost of improving each lot for permitted purposes was approximately $30,000. Plaintiffs' real estate appraiser figured that a $65,000 cost per lot would allow for profit, stated that a house on such lots would cost $350,000 in an area of $80-150,000 homes, and expressed the opinion that there was no market for homes of that cost so that the highest and best use of the property was not single-family residential. Defendant's real estate appraiser, on the other hand, opined that plaintiffs could improve the lots for $27,000 per lot, sell homes in the $100-130,000 range, and still make a profit.

The last factor set forth in *La Salle* is the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. Both parties agree that the property has been vacant at least since its annexation by Westmont in 1965 and that it has always been zoned for single-family residential use. Plaintiffs insist that the property is and will remain vacant because the configuration of the creek and costs necessary to solve that problem prohibit development or sale as

zoned.

■ However, as noted above, there was evidence that the property could be profitably developed under the present zoning. Adjacent to and immediately east of the subject property, plaintiffs Cech and Flavell built and sold 200 Newfield Manor homes between 1968 and 1978. Plaintiff Peter J. Cech himself testified that the property was not developed because the platted Williams Street bordering the entire 800-foot western boundary of the subject property had not been put in and that they had never attempted to market the property as single-family residential. Plaintiffs have failed to establish that the property remained vacant and undeveloped because of the zoning classification. See *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 384.

■ In addition to the six factors enumerated in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, the Illinois Supreme Court in *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, added two more factors to be considered—community need for the use proposed by plaintiff and the care with which the community had undertaken to plan its land use development. (Accord, *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54.) Regarding the first of these, both defendant's expert land planner and its mayor testified that Westmont had a greater than normal amount of multiple-family units for a community of its size, and there does not appear to be evidence of a need for plaintiffs' proposed multiple-family residential use in the community. Regarding the second, Westmont has a comprehensive plan of which the zoning ordinance is a part, and defendant's expert planner, mayor and planning commission chairman testified regarding the planning program that produced the plan. Based on this record, plaintiffs' assertion on appeal that Westmont exercised minimal care in planning and zoning land use appears to be, as defendant characterizes it in its reply brief, a bold assertion. Although the long-range zoning plan of the county is not sacrosanct, it is entitled to a certain amount of respect (*Parkway Bank & Trust Co. v. County of Lake* (1979), 71 Ill. App. 3d 421, 426), and the development of the property as single-family residential or, alternatively as shown on the proposed map, as retention/park is harmonious with this plan.

■ Having considered the evidence in this case in light of the factors enumerated in *La Salle* and *Sinclair*, we conclude that the plaintiff failed to overcome the presumption of validity implicit in defendant's zoning ordinance and that the trial court's finding to the contrary is against the manifest weight of the evidence.

■ Further, even if plaintiffs had proven the zoning ordinance as generally applied to the subject property was invalid, they would still have had the burden of proving by clear and convincing evidence that their proposed plans of development were compatible and reasonable in their application to the subject property in order to be entitled to relief. *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 56-57.

Plaintiffs proposed to use the property for 60 multiple-family units in five buildings and for two single-family homes. Plaintiffs introduced into evidence two plans for development. The trial court found the plans to be substantially similar and reasonable.

The first plan proposed access to the property through single-family Newfield Manor. The second plan, among other changes, proposed access to the property on one-half of Williams Street to be completed by Cech from 59th Street to the property. Under both plans, the floodway on the property would be partially filled and the creek through the property would be reconstructed in that it would be narrowed, reinforced and velocities of water therein increased. Under both plans, a major portion of the required storm water storage would have to be stored off the property, though the location of the required storm water storage offsite had not yet been determined. Neither plan provided for sufficient parking under the applicable Westmont ordinances or for the completion of 58th Street (James) through the property as required by the Westmont land development ordinance, and the first plan provided for rights-of-way therein narrower than required.

■ Both plans create public safety problems in this area of traffic and storm water control that will have a deleterious effect upon the residential quality of the neighborhood. While the traffic safety problems in adjacent Newfield Manor in plaintiffs' first plan are largely handled in the second plan, even the second plan has traffic safety problems, according to Westmont's traffic safety expert. These are largely related to increased density. Density is a legitimate concern in a zoning case and an adequate basis for classification. Residents of an area are entitled to the lower density requirements which directly relate to their health, safety and morals, and a municipality may reasonably restrict increases in population density where necessary for health, safety and welfare. *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 383.

The reconstruction of the creek, increasing its depth and velocity, is a public safety problem in both plans. Defendant's expert civil engineer testified that the creek would be deeper and the increased veloc-

ity could cause a person to lose footing in the creek and that setting a hard, unyielding surface on the creek bed, as proposed, would increase the potential for injury from a fall as compared to the potential for injury from a fall in the current soft clay bottom. Also, since the creek flows from south to north and detention is planned south of the property, the storm water detention is provided for upstream rather than downstream. According to defendant's expert civil engineer, the proposed storm water management poses "a very definite potential for damaging conditions in the servient property," and the planned storage is inadequate.

Additionally, the plans are speculative in nature. Both provide for storm water detention on park district property. However, the testimony of the park district administrator and a commissioner, as well as that of Peter J. Cech, establishes that the park district has discussed the matter with Cech but has not committed itself. Illinois Department of Transportation permits for the relocation of the creek have not been issued. Neither of these bodies is a party to the lawsuit and would not be bound by the plans approved by the court. (*Newberry Library v. Board of Education* (1944), 387 Ill. 85.) Also, the second plan calls for construction of Williams Street for ingress and egress to the development that would take it across property not owned by plaintiffs.

■■ We conclude that the trial court's finding that the plans are reasonable in their application to the subject property is against the manifest weight of the evidence and constitutes an additional basis for reversing the trial court's judgment.

Having so found, it is not necessary to reach the other issues raised by defendant.

For both reasons set forth above the judgment of the trial court is reversed.

Reversed.

SEIDENFELD, P.J., and NASH, J., concur.