LEROY VAN DUYNE *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE CITY OF CREST HILL, Defendant-Appellant and Cross-Appellee.

Third District   No. 3—85—0022

Opinion filed September 23, 1985.

Thomas E. Cowgill and Robert S. Krockey, both of Block, Krockey, Cernugel & Cowgill, P.C., of Joliet, for appellant.

Thomas R. Wilson, of Hersch, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiffs, LeRoy and Rose Van Duyne, brought a two-count complaint in the circuit court of Will County against the city of Crest Hill. Count I sought damages based on a theory of inverse condemnation. Count II requested a declaratory judgment that the defendant's zoning ordinance was void as imposed on plaintiffs' property, and sought an injunction restraining the defendant from enforcing the zoning or, in any way, hindering plaintiffs in exercising the uses they had proposed for the property. Count I was tried by jury. Count II was a bench trial. At the close of plaintiffs' case in chief, the court directed a verdict in favor of the defendant as to count I and discharged the jury. At the close of all evidence, the court ruled in favor of the plaintiffs as to count II and declared the zoning ordinance arbitrary, unrea-

sonable, and void as applied to plaintiffs' property and entered judgment accordingly. Defendant now perfects this appeal seeking reversal of the trial court's judgment rendered as to count II. Plaintiffs counterappeal from the trial court's directed verdict as to count I.

Plaintiffs purchased a three-story brick school building and asphalt grounds from the Chaney/Monge School District No. 88. The building has been vacant since June 1983. Plaintiffs intended to use the building's gymnasium and kitchen for a public banquet hall and for bingo and the remainder of the building for business offices. The school's asphalt lot was to be used for parking. At the time of the sale and prior thereto, the zoning on this property was classified as R-1 residential, which permitted residential housing and also special uses, including recreational areas, parks, schools and churches. This zoning classification, however, would not permit the use of the property as plaintiffs intended. Plaintiffs sought rezoning of the property to permit these proposed uses which was recommended by the defendant's plan commission but was denied by its city council on July 20, 1984. This cause of action was then commenced.

On appeal, defendant contends (1) the trial court's judgment that the zoning ordinance as applied to plaintiffs' property is contrary to the manifest weight of the evidence; (2) the trial court erred in holding that zoning may not be used to deal with traffic and pedestrian problems; and (3) the trial court erred in admitting newspaper advertisements into evidence and using them to support a finding that the plaintiffs' property is worthless as presently zoned and would remain vacant if not rezoned.

We first consider whether the trial court's decision was against the manifest weight of the evidence. The burden of proof is on the plaintiff to overcome, by clear and convincing evidence, the presumption that a zoning ordinance is valid. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 312 N.E.2d 625.) To be sustained, the validity of a zoning classification must bear a substantial relation to the public health, safety, comfort, morals or general welfare, and its validity as applied to a specific property depends on the sum total of the particular facts found in each case. *Cech Builders, Inc. v. Village of Westmont* (1983), 118 Ill. App. 3d 828, 455 N.E.2d 817.

The zoning function rests primarily within the province of the municipality, and where there is room for a legitimate difference of opinion concerning the reasonableness of an ordinance governing the use of private property or where such question of reasonableness is fairly debatable, courts will not interfere with the legislative judg-

ment. (*Trust Co. v. City of Chicago* (1951), 408 Ill. 91, 96 N.E.2d 499.) However, mere conflict of testimony does not create an irrebutable presumption of validity or require a finding that the reasonableness of the ordinance is debatable. Such conflicts go to the credibility of witnesses and the weight to be afforded their testimony. (*Cech Builders, Inc. v. Village of Westmont* (1983), 118 Ill. App. 3d 828, 830, 455 N.E.2d 817, 819.) These are matters which must be determined by the trier of fact, subject to reversal only when against the manifest weight of the evidence. (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 426 N.E.2d 1276.

■ The supreme court in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65, set out six factors that may be taken into consideration in making a determination of the validity of an ordinance, to wit: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. Two additional factors are also to be considered, namely; (7) the care with which the community has undertaken to plan its land use development; and (8) the evidence or lack of evidence of community need for the use proposed by the plaintiff. *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406.

■ In reviewing the facts of this case and applying them to the above criteria, it is clear that neither party is in a position to claim that all of the factors favor that party's case. The testimony of the witnesses as to these factors varied predictably depending for whom the witnesses were testifying. The existing uses and zoning of nearby properties are primarily residential. There are, however, some variances including a small grocery store, a barber shop, a neighborhood tavern, and a community swimming pool. Additionally, there is located nearby a Catholic church and a newer school with a school park and baseball fields.

Each party presented witnesses on the issue of property values. Unsurprisingly, plaintiffs' witnesses testified there would be no impact on the values of surrounding properties, while defendant's witness estimated a 10% "across the board" depreciation on houses located

nearby. This witness, however, previously indicated in an appraisal of the property that its use as a "light" warehouse would have no impact on property values. Conflicting testimony was also given as to the value of the property itself as presently zoned. Each party presented evidence as to the cost of razing the building and creating residential lots and the demand for them.

Further testimony was given as to the third and fourth factors. Defendant offered the testimony of nearby residents of the property whose main concerns were the increased vehicular traffic in the area should the plaintiffs' proposed use be allowed which would, in their opinion, increase the danger to pedestrian traffic, especially to children. As to the suitability of the subject property for the zoned purposes, all experts testified that the highest and best use of the property is some type of commercial use.

The sixth factor, length of time the property has been vacant as zoned, normally concerns vacant property. There is no dispute that the school was abandoned by the school district and has been vacant since June 1983. No evidence was presented that it would ever again be used as a public school. Further, no evidence was presented which contradicted the trial court's finding that the school's remaining vacant will cause the property to fall into disrepair.

With regard to the community need for such a proposed use, it appears there is more of a need for a banquet hall facility than for residential lots. Finally, the present zoning ordinance was adopted in 1973. This ordinance was never recorded, as provided by law. See Ill. Rev. Stat. 1983, ch. 24, par. 11—12—7.

The official zoning map has been kept in the city engineer's possession since 1962. The defendant has never enacted or adopted formal street maintenance programs. The facts also disclose nonconforming uses in the neighborhood. Taken as a whole, it appears the defendant's care in planning, implementing and enforcing land use development is somewhat flaccid.

Having considered the facts in this case based upon the factors enumerated in *La Salle* and *Sinclair*, and while no overwhelming number of these factors favors either party, we conclude that the plaintiffs successfully overcame the presumption of validity of the defendant's zoning ordinance as applied to this property and that the trial court's decision is not against the manifest weight of the evidence.

Some question has been raised that the trial court's order is mandatory in the issuance of licenses to the plaintiffs. The trial court's order, in pertinent part, states:

"4. THE CITY OF CREST HILL is hereby commanded and required to issue all necessary incidental and convenient licenses and permits for development and operation of the said property for the uses contemplated upon application and compliance with all ordinances and regulations other than the said zoning ordinance."

In our opinion, the order makes clear that plaintiffs must apply and comply with all applicable ordinances before any license can be issued and that the only ordinance against which relief is afforded is the zoning ordinance.

■ We next consider whether the trial court erred in holding that zoning may not be used to deal with traffic and pedestrian problems. While traffic has been recognized as a factor in zoning cases, the supreme court has stated that traffic "is not in itself entitled to too much weight since it is a problem in all but the most sheltered neighborhoods and is constantly getting worse." (*La Salle National Bank v. Village of Skokie* (1962), 26 Ill. 2d 143, 146, 186 N.E.2d 46, 48; see also *La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 369 N.E.2d 505; *Furling v. County of Sangamon* (1984), 126 Ill. App. 3d 851, 467 N.E.2d 646.) We find no error in the trial court's decision regarding this issue.

■ Finally, we consider whether the trial court erred in admitting newspaper advertisements into evidence. Defendant contends that the trial court erred in admitting the advertisements because they were irrelevant and were used by the trial court to support its finding that the subject property was worthless as presently zoned and would remain vacant if not rezoned. The advertisements which solicited bids read "R-1 zoning now. Limited B-1 zoning possible. One acre, paved parking." We agree with the defendant that these advertisements were not relevant to the proceedings. They were not published by the defendant, and they do not prove anything about the market value of the property. We find, however, that any error in admitting the advertisements into evidence is harmless and not reversible.

■ ■ With regard to the trial court's directed verdict in favor of defendant as to count I, plaintiffs have counterappealed and contend that they should be awarded damages for either a permanent or a temporary taking of their property based on a theory of inverse condemnation. Since the trial court ruled in favor of plaintiffs in count II, which we have affirmed, there could be no permanent taking under this theory. It must be determined, therefore, whether plaintiffs could prevail on their theory of a temporary taking. We think not.

We note that plaintiffs entered into the contract to purchase the

property with full knowledge of the existing zoning. Further, they executed the contract without making it contingent upon obtaining their desired zoning. Plaintiffs accepted this risk and now seek damages for the consequences of a business decision. We do not find the theory of inverse condemnation applicable under such circumstances.

The cases cited by the plaintiffs as authority for their proposition that the denial of their rezoning request constituted a "taking" of the subject property are not persuasive and are inapplicable as applied to the facts of this case. (See *Citizens Utilities Co. v. Metropolitan Sanitary District* (1974), 25 Ill. App. 3d 252, 322 N.E.2d 857; *Agins v. City of Tiburon* (1980), 447 U.S. 255, 65 L. Ed. 2d 106, 100 S. Ct. 2138; *Burrows v. City of Keene* (1981), 121 N.H. 590, 432 A.2d 15; *Hamilton Bank v. Williamson County Regional Planning Com.* (6th Cir. 1984), 729 F.2d 402.) Plaintiffs principally rely on the *Hamilton Bank* case, however, *Hamilton Bank* is not only distinguishable on its facts, it is also distinguishable as to principle. This principle, in effect, is that once a court finds a taking by the government based upon an invalidation of a zoning ordinance, the government has to "compensate the landowner for any economic loss suffered during the time his property was taken." (729 F.2d 402, 408.) In *Hamilton Bank*, the defendant changed the zoning on the subject property after it was acquired by the property owners and it was found that a taking of the property had occurred. Such was not the case here, and the trial court found no taking. Similarly, we also find no taking. Therefore, the trial court did not err in directing a verdict for the defendant as to count I.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE, P.J., and WOMBACHER, J., concur.