COSMOPOLITAN NATIONAL BANK, Trustee, *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF NORTHBROOK, Defendant-Appellant.

First District (3rd Division)   No. 83—1141

Opinion filed December 4, 1985.

Burke, Bosselman, Freivogel, Weaver, Glaves & Ryan, of Chicago (Clifford L. Weaver and Susan B. Harmon, of counsel), for appellant.

Rudnick & Wolfe, of Chicago (Theodore J. Novak, Don E. Glickman, and Thomas F. Geselbracht, of counsel), for appellees.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiffs, Cosmopolitan National Bank, not individually but as trustee under trust No. 14422, Irving Margolin and Grace Margolin, filed this action for declaratory judgment challenging a zoning ordinance of the defendant, the village of Northbrook. The trial court entered judgment in favor of the plaintiffs, finding the ordinance unreasonable, null and void as applied to the subject property insofar as it prevented the use thereof for the plaintiffs' proposed development. The defendant appeals. The issues presented for review are: (1) whether the trial court's judgment was contrary to Illinois law, and (2) whether the trial court made prejudicial evidentiary rulings.

The subject of this action is property located along the south side of Dundee Road about 500 feet west of Pfingsten Road in Northbrook. It consists of approximately 5.1 acres, 460 feet by 470 feet. The property is currently zoned R-4 for single-family residences on 12,000-square-foot lots and is vacant except for a house on its northeast corner. The western and southern borders of the subject

property abut property zoned R-5 for single family residences on 7,500-square-foot lots. Approximately half of the eastern boundary of the subject property borders property zoned R-4; the other half borders property zoned R-6 for general residence. The northern boundary of the subject property is adjacent to Dundee Road.

On July 22, 1981, the plaintiffs filed an action for declaratory judgment. The complaint alleged that in September 1980, they petitioned Northbrook's plan commission to rezone the subject property from R-4 single-family residences to B-3, with a special-use permit for a planned unit development. B-3 is a commercial-use classification. The plaintiffs sought rezoning for the purpose of constructing a 55,000-square-foot, nine-building, single-story office complex "of a residential character." Following two public hearings, the petition was denied. The complaint sought judgment declaring that the plaintiffs' proposed use was reasonable, that the Northbrook zoning ordinance was unreasonable and void, and that Northbrook be enjoined from interfering with the plaintiffs' proposed use, and other relief.

At trial, Alan Kracower, a city planning consultant and a landscape architect, testified that the plaintiffs' proposed development would be the highest and best use of the subject property. He based that conclusion on the overall trend and character of the area, which he believed to be "predominantly commercial and office," and on his opinion that Dundee Road, a four-lane arterial highway carrying a volume of approximately 30,000 cars daily, would make the subject property unsafe and inaccessible for residents.

Albert Wengerhoff, an architect and developer, testified that he had done an architectural and land use feasibility study for the plaintiffs. He had concluded that the subject property was best suited for light commercial use "or in this case an office type use."

Bernard Peller testified that he was vice-president of Ayres and Associates, a real estate brokerage firm. Ayres and Associates had been responsible for marketing the property adjacent to the subject property for at least four years. It consisted of a lot, three quarters of an acre in size, and a seven-room frame house. Five offers to purchase had been received; four were made contingent on rezoning.

Neil S. Kenig, a transportation planning consultant, testified that he had made a traffic impact study regarding the plaintiffs' proposed development. He opined that Dundee Road had the capacity to handle the additional traffic that would be generated by the office complex.

James Edwin Brown, a consulting engineer, testified that he had been retained by the plaintiffs to do an engineering feasibility study. He believed that the existing utilities were adequate to service the

proposed development.

Plaintiff Irving Margolin testified that he inherited 3½ acres of the subject property in 1965. He acquired the balance of the property in 1970 or 1972 and 1980. He unsuccessfully sought rezoning of the property in October 1980 and May 1981. He had never listed his property for sale or posted a "for sale" sign. Margolin testified that since 1965, Dundee Road had been expanded from a two-lane to a four-lane highway. Land west of the residential zone which borders the western boundary of the subject property had been rezoned from residential to commercial and now accommodates a tennis club. West of the tennis club and north of Dundee Road, property had been rezoned from residential to M-1, manufacturing with a special use; a single-story office building is presently located there. West of these developments at the intersection of Dundee and Landwehr Roads is a gas station and a shopping center. Three houses in a residential zone north of Dundee Road and west of the subject property were being used as commercial offices. A convenience store was separated from the eastern border of the subject property by a residential zone. The remaining property in the area contained apartment buildings, townhouses and single-family residences. Margolin did not believe that the subject property could be "developed economically" for single- or multiple-family purposes.

Neil King, a real estate broker and appraiser, testified that, in his opinion, there was no demand for further residential development in the area of the subject property. He did not think that the plaintiffs' proposal would alter the essential character of the area. King believed that there was a need for additional office space in the area. He had noticed a trend toward commercial development along Dundee Road during the last 15 years. King stated that the highest and best use of the subject property would be an office development similar to the one proposed by plaintiffs. He believed that, as presently zoned, R-4, or as zoned R-5, the fair market value of the subject property was about $100,000; if developed as proposed, the property's fair market value would be approximately $765,000. On cross-examination, King admitted that since 1977, there had been a steady downward trend in the real estate market.

Steven Pawlan testified for the defendant that he owned a house and lot which abutted the south edge of the subject property. He paid $120,000 for the property in December 1980. Before purchasing the home, he investigated the zoning classifications in the area. He would not have bought the house if the subject property had been zoned for commercial or nonresidential use. Pawlan believed that if the plaintiffs' proposed development were constructed, his enjoyment of and

the value of his property would be diminished.

Iris Goldfein testified that she owned a home on a lot adjacent to the subject property. Before purchasing it, she checked the zoning classification of the subject property. She would not have made the purchase if the subject property had been zoned for nonresidential development. Goldfein bought the house in 1979 for about $160,000, and spent an additional $6,000 to build a useable back yard.

Joseph Abel, director of development of Du Page County and a private planning consultant, testified that, except for two planned shopping areas, the land use, zoning and trend of development in the vicinity of the subject property was residential in character. The Northbrook comprehensive plan depicted the subject property as zoned for single-family residential use. Abel thought that Northbrook had developed and followed a consistent policy fulfilling its comprehensive plan with respect to commercial and office development. He saw the plaintiffs' proposal as totally inconsistent with the village comprehensive plan as well as with the character, trend of development and current zoning and land uses in the vicinity. The community presently had about 614 acres available for business and office use; about 259 acres had been proposed in a new plan for additional office and commercial use. Abel concluded that Northbrook had no need for additional land zoned for office use. Development of the subject property as zoned and according to site plans prepared by Abel would be the highest and best use of the property and would be consistent with area land use, character, trend of development, and the village comprehensive plan.

Ralph H. Martin, a realtor and appraiser, testified that the general character of the area surrounding the subject property was residential. A 10% to 15% vacancy existed in the office buildings in Northbrook, which was normal in light of the economy. If the subject property were developed into an 11-, a 15- or an 18-lot development, its value would be approximately $450,000, $478,000 or $600,000, respectively. If developed pursuant to the plaintiffs' proposal, its net value would be about $620,000, and the value of the surrounding residential property would be adversely affected. In Martin's opinion, the highest and best use of the subject property would be residential. On cross-examination, Martin admitted that, at a previous trial, he had testified that the trend of development west of Pfingsten Road along Dundee Road was commercial.

The defendant's final witness was Paul C. Box, a traffic engineering consultant. He testified that the proposed development should include a westbound left-turn lane so that Dundee Road could safely

and efficiently accommodate the traffic that would be generated. To install such a lane would cost approximately $40,000. The development of single-family residences on the subject property would require no such improvement.

In rebuttal, the plaintiffs called John Edward Reinert to authenticate a document. He testified that in May 1981, when he was the chairman of the Northbrook Plan Commission, he reviewed a rezoning request from plaintiff Margolin. In the course of his review, he received a report from Thompson Dyke, a planning and zoning consultant, relating to the property. On cross-examination, he stated that he did not participate in the hearing on Margolin's petition; therefore, he did not know whether the Northbrook Plan Commission considered the report.

Ralph Harwood, a residential home builder, took the stand to make an offer of proof. He saw the existing single-family detached residential market in the Northbrook area as very depressed. He did not think that a builder would buy the subject property under its current R-4 classification because the location was not conducive to single-family detached housing and there were more desirable locations in Northbrook for single-family detached housing.

Tracey Cross testified that he was a market analyst for developers, builders and lenders regarding the feasibility of housing and commercial ventures. He did not believe there was a market for 11 single-family detached lots on the subject property. To include a $55,000 improved lot cost, the price of a house would have to exceed $200,000.

On April 11, 1983, the trial court entered judgment in favor of the plaintiffs, finding the Northbrook zoning ordinance unreasonable, null and void as applied to the subject property insofar as it prevented the use of the subject property for the plaintiffs' proposed development. The defendant appeals.

■ The defendant contends that the trial court's judgment was contrary to Illinois law. It is well established that it is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) As the court noted in *Cosmopolitan National Bank v. County of Cook* (1983), 116 Ill. App. 3d 1089, 1095-96, 452 N.E.2d 817,

"a court has no power to rezone property from one classification to another. That is a legislative function. [Citations.] *** [I]n reviewing the validity of a zoning ordinance, a court should not inquire whether the property as presently zoned might be better zoned some other way. To do so would amount to judicial rezoning."

A zoning ordinance will be upheld if it bears any substantial relationship to the public health, safety, comfort or welfare. (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 307-08, 388 N.E.2d 388, citing *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899.) The presumptive validity accorded a zoning ordinance may be overcome only by clear and convincing evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *Kleidon v. City of Hickory Hills* (1983), 120 Ill. App. 3d 1043, 458 N.E.2d 931.

■■■ In *La Salle National Bank v. County of Cook*, our supreme court set forth six factors to be considered in determining the validity of an ordinance: (1) the existing uses and zoning of nearby property, (2) the extent to which property values are diminished by the particular zoning restrictions, (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, (5) the suitability of the subject property for the zoned purposes, and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47.) Additional factors to be considered are the existence of a reasonable comprehensive plan for the area which incorporates valid zoning goals (*Oak Park Trust & Savings Bank v. Village of Palos Park* (1982), 106 Ill. App. 3d 394, 435 N.E.2d 1265), community need for the use proposed by plaintiff (*Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406; *Cech Builders, Inc. v. Village of Westmont* (1983), 118 Ill. App. 3d 828, 455 N.E.2d 817) and the care with which the community had undertaken to plan its land development (*Sinclair Pipe LIne Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406; *Cech Builders, Inc. v. Village of Westmont* (1983), 118 Ill. App. 3d 828, 455 N.E.2d 817). Of paramount importance are the questions whether the property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established. *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 388 N.E.2d 388; *Park-*

*way Bank & Trust Co. v. Village of Norridge* (1982), 106 Ill. App. 3d 350, 436 N.E.2d 9.

■ Applying the *La Salle* factors to the case at bar, we find that the judgment of the trial court is against the manifest weight of the evidence. First, the existing uses and zoning of the surrounding property, and of the bulk of nearby property, are residential in character. Second, it is true that here, as in most cases, the subject property would probably have a higher value if zoned for business purposes. (See *Parkway Bank & Trust Co. v. Village of Norridge* (1982), 106 Ill. App. 3d 350, 436 N.E.2d 9.) However, it is not the mere loss in value that is significant; rather, the loss in value to the plaintiffs must be considered in relation to the public welfare. *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 388 N.E.2d 388.

■ This brings us to the third and fourth criteria of *La Salle*, the extent to which the destruction of plaintiffs' property value promotes the health, safety, morals or general welfare of the public relative to the hardship on the plaintiff property owners. We note that the plaintiffs acquired at least part of the subject property with full knowledge of the preexisting zoning classification. While this fact did not preclude a challenge to the village's denial of their petition to rezone, it does have a bearing on their claim. (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 388 N.E.2d 388.) As the court noted in *Fay v. City of Chicago* (1979), 71 Ill. App. 3d 603, 390 N.E.2d 125:

> "Those who purchase property with knowledge of existing zoning restrictions occupy an unfavorable position in challenging the validity of these limitations; however, a property owner may prevail where *** there is no gain to the public as compared with the economic detriment that will be sustained if the restriction were to apply [citation]. This is especially true when there is no evidence that the values of the surrounding properties will be affected by the proposed use. [Citation.]" (71 Ill. App. 3d 603, 610, 390 N.E.2d 125.)

(See also *Cech Builders, Inc. v. Village of Westmont* (1983), 118 Ill. App. 3d 828, 455 N.E.2d 817.) In the instant case, two nearby property owners and a realty appraiser testified that the values of surrounding properties would be adversely affected by the plaintiffs' proposed use. The nearby property owners purchased their land in reliance on existing zoning classifications. We cannot say that the hardship to the plaintiffs of not rezoning the subject property would outweigh the benefits to the community.

Regarding the fifth *La Salle* criteria, the plaintiffs contend that their proposed development would be the highest and best use of the

subject property, but there is no evidence that the subject property is unsuitable for development as presently zoned. As to the final *La Salle* factor, the party relying on length of time its property has been vacant must establish that the property is unsaleable, vacant or undeveloped because of the zoning classification. (*Oak Park Trust & Savings Bank v. Village of Palos Park* (1982), 106 Ill. App. 3d 394, 435 N.E.2d 1265.) One single-family residence exists on the subject property. According to plaintiff Margolin's testimony, he has never put the subject property on the market. There was no evidence that the property could be profitably developed further under the present zoning. The plaintiffs failed to establish that the property was unsaleable, vacant or undeveloped because of its zoning classification.

■ Regarding the other factors to be considered, the evidence showed that Northbrook has a comprehensive plan of which the zoning ordinance is a part; Northbrook has developed and followed a consistent policy fulfilling its comprehensive plan with respect to commercial development, which the plaintiffs' proposal would violate; a 10% to 15% vacancy existed in the office buildings in Northbrook; and the community had about 614 acres available and 259 acres proposed for office and commercial use. Under these facts and circumstances, there is no indication that the residential classification of the subject property is arbitrary, capricious or unrelated to the public health, safety and morals. The subject property is zoned in conformity with surrounding existing uses. The mere fact that exceptions exist to the predominant character of an area does not require a finding that zoning which would preserve the predominant classification is error. (*Wilson v. County of McHenry* (1981), 92 Ill. App. 3d 997, 416 N.E.2d 426.) The plaintiffs failed to meet their burden of overcoming with clear and convincing evidence the presumptive validity accorded the Northbrook zoning ordinance.

*Chicago Title & Trust Co. v. County of Cook* (1983), 120 Ill. App. 3d 443, 457 N.E.2d 1326, which the plaintiffs cited as additional authority in support of their position, is readily distinguishable from the instant situation. In that case, Northbrook challenged the County Board's decision to rezone the subject property from R-4 residential to C-4 commercial. The evidence showed a significant amount of commercial development in the area of the subject property; no development of new single-family homes in the area for several years; the owner's inability to sell the property while zoned R-4; and a pattern of mixed commercial uses and single-family dwellings in the subject

area. The trial court's decision finding the amendatory zoning ordinance reasonable and valid was affirmed by the appellate court. Contrary to that case, however, the subject property in the instant case is located in an area which is predominantly residential in character, the exceptions being mainly planned business and shopping areas at major intersections. Furthermore, the plaintiffs have made no attempt to sell the subject property. As Northbrook's action in adopting the plan for its village has not been shown to have been arbitrary, capricious or unrelated to the public health, safety and morals, we cannot affirm the decision of the trial court. To do so would be to condone judicial rezoning. Therefore, we hold that the trial court erred in entering judgment in favor of the plaintiffs and finding the zoning ordinance unreasonable, null and void as applied to the subject property insofar as it prevented the use of the subject property for the plaintiffs' proposal.

The defendant argues that the trial court made prejudicial evidentiary rulings. In light of our decision reversing the trial court's order, it is not necessary to address this question.

For the foregoing reasons, the order of the circuit court of Cook County is reversed.

Reversed.

WHITE, P.J., and McNAMARA, J., concur.