FRANK DeMARIE *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF LAKE FOREST, Defendant-Appellee.

Second District    No. 79-770

Opinion filed January 20, 1981.—Modified on denial of rehearing March 19, 1981.

Robert Marks, of Marks, Marks & Kaplan, of Chicago, for appellants.

Murray R. Conzelman, of Conzelman, Schultz & Snarski, of Waukegan, and Thomas H. Compere, of Lake Forest, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs appeal the denial by the city of Lake Forest of their request for a rezoning of approximately eight acres of property owned by them from R-4 (detached single-family residence on 60,000 square foot sites) to GR-2 (general residential which would allow duplexes as a special use). The property is a backward "L" shape, the longest part of which fronts on Everett Road on the north and the short part of which fronts on Waukegan Road on the west. The parcel forming the short part of the "L" is already zoned GR-2. According to the record, nestled in the crook of the "L", fronting on Waukegan Road and abutting the west side of the long part of the "L," are two neighborhood business uses zoned B-1; a veterinary clinic and a farm and garden store. To the south of these two uses and still nestled within the crook of the "L", is a 1½-acre area zoned GR-2 fronting on Waukegan Road and developed with multifamily residences to a density of approximately 11 units per acre. Across Waukegan

Road from the area just described above is a gas station and the Lake Forest commuter railroad station. Located to the north of the subject property across Everett Road is a church in a B-1 zone, which church property faces about one-half of the subject parcel; to the east of the church and facing the remaining one-half of the subject parcel is a single-family residence which is abutted on the north by the church parish center, and on the east by four vacant lots, then a single-family residence, two more vacant lots, and then five single-family residences. Directly east of the subject property on the south side of Everett Road are four other single-family residences. The area directly south of the subject property is vacant land, approximately one-third of which is zoned GR-2 and two-thirds of which is zoned R-4. To the north and west of the church along and across Waukegan Road are areas zoned B-1, which are comprised of several vacant parcels and existing uses such as a food store, a bank, a construction company, a nursery, and a small shopping plaza. A large pond currently exists approximately in the center of the subject property.

The plaintiffs purchased the largest portion of the property in 1950, and obtained the remainder in 1966. Plaintiffs built their home on the northeast corner of the property, making several additions to it over the years. In 1973, they received a $285,000 offer for the entire parcel contingent upon rezoning for a retail commercial use. Lake Forest approved the rezoning of the entire parcel for commercial use, but the sale was not consummated and the zoning apparently reverted to its prior classification. In 1975, the plaintiffs listed their property with a broker, but received no offers from buyers seeking to use it for residential or other uses until 1976. At that time, they received an offer of $450,000 for the entire parcel contingent upon rezoning to GR-2 with a special use permit for a planned unit development of 112 condominium apartment units in three buildings. The rezoning petition was denied. In late 1977 or early 1978, plaintiffs received an offer of $400,000 contingent upon rezoning for a planned unit development for a combination of 75 condominium apartments and townhouses. That rezoning request was also denied. In late 1978, plaintiffs received an oral offer of $450,000 contingent upon rezoning to permit a condominium project. No petition for rezoning was filed as the result of that oral offer.

The offer which prompted the instant petition was from Lake Shore Building Company for $350,000 plus one free townhouse valued at $160,000 a total of $510,000. The offer was contingent upon rezoning and approval of a 36-unit townhouse development. The units were proposed to be constructed in a total of 18 buildings clustered around the slightly enlarged water retention pond, each building to be designed as a duplex; that is, two single-family attached residences.

An additional notable factor to be considered in this case is that on January 9, 1978, Lake Forest adopted an "Official Comprehensive Plan" which updated its city plan of 1955. The comprehensive plan contemplates a "townhouse residential use" for the subject property including the area adjacent which is now zoned and used for B-1 (neighborhood business) purposes. The plan as adopted excludes from this proposed townhouse zone, however, the plaintiffs' residence and approximately 1½ acres surrounding it, and contemplates a single-family zoning thereof. There was testimony which indicated the first version of the comprehensive plan included the area of the plaintiffs' residence in the townhouse zone, but none of the witnesses were able to provide an explanation as to why this portion of the property was excluded from the final version of the plan. The existing church and parish center property to the north of the subject property would be zoned for public and semipublic uses, and the area of the single-family homes to the east of the church would remain a single-family zone. The other areas previously described to the north and west of the church property and to the west of the subject property which are currently primarily neighborhood business uses are depicted in the comprehensive plan as retail and service commercial zones.

■■ Plaintiffs correctly point out that the issues on review are (1) whether the existing zoning as applied to the plaintiffs' property is valid, and (2) whether the use proposed is reasonable. (*Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370.) Plaintiffs argue that Lake Forest tacitly admitted the present zoning was invalid, since both its expert witnesses testified the highest and best use of the property was for a townhouse use excluding, however, the northeast 1½ acres where the plaintiffs' single-family residence is located. Alternately, plaintiffs assert they have sustained their burden of proving the invalidity of the present zoning and that an application for the criteria enunciated by prior cases to the particular facts of this case will support their assertion. Defendant, on the other hand, argues that the court has no power to divide the property and that if the R-4 zoning is valid as to part of the parcel, it is valid as to the entire parcel. Defendant further argues that the plaintiffs anticipated increase in profit as the result of rezoning does not justify the rezoning and that the plaintiffs were aware of the zoning of the property when they purchased it.

■■ As a general rule, a zoning restriction is valid and will be upheld if it bears a substantial relationship to the public health, safety, comfort, morals and welfare. (*Marquette National Bank v. County of Cook* (1962), 24 Ill. 2d 497, 501.) The question whether a zoning ordinance is arbitrary, unreasonable and capricious in its application to a given parcel of land, or whether it is reasonable and bears a substantial relation to the public

welfare, is subject to review by the courts, and, of necessity, each case must be decided upon its own particular facts. (*Krom v. City of Elmhurst* (1956), 8 Ill. 2d 104, 107.) Factors to be considered in determining the validity of rezoning as applied to particular property include (1) the existing uses and zoning of nearby property; (2) the extent to which property value is diminished by the particular zoning restriction; (3) the extent to which the general health, safety and welfare is promoted by virtue of the zoning restrictions; (4) the relative gain to the public compared to the hardship imposed on the plaintiff by way of the diminution of the value of the property as a consequence of the restriction; (5) the suitability of the particular property for the purposes for which it is now zoned; (6) the length of time the property has been vacant as zoned, considered in the context of land development in the area in which the property is located; (7) the care with which the community has undertaken to plan its land use development, and (8) the evidence or lack of evidence of community need for the use proposed by the property owner. (*Hoffmann v. City of Waukegan* (1964), 51 Ill. App. 2d 241.) Zoning ordinances are presumed valid, and legislative judgments must prevail where there is a fair and legitimate difference of opinion concerning the validity of a zoning restriction. *Wehrmeister v. County of Du Page* (1957), 10 Ill. 2d 604.

At the outset, we note that the actual crux of the controversy seems to be whether the northeast 1½ acres, which is approximately the site of the plaintiffs' existing residence, should be included in the rezoning or not. We observe that the entire "L" shaped parcel, including the site of plaintiffs' residence, is the subject of the petition for rezoning to GR-2 with a special use to permit the proposed 36-unit duplex project. The city denied the proposed use as it applied to the entire parcel. The 1½ acres at the eye of the controversy is not a separate subdivision carved out of the plaintiffs' property. The separate identity of this 1½ acre tract arises primarily, we believe, by reference to the Official Comprehensive Plan, which excludes this section from the remainder of the parcel's proposed townhouse residential zoning. This in turn, we suspect, reflects more a statement of existing use and the policy to maintain the city's overall residential character than a true recommendation to exclude this relatively small parcel from the transitional townhouse use proposed for the remainder of the tract. The stated purpose of the comprehensive plan is that it is intended to serve as a resource and technical and policy guide for future decisions by Lake Forest officials. In this regard, we note the plan contemplates preservation of the city's residential character, but also promotes a sizable increase in the acreage upon which two-family and attached single-family residences will be permitted. Referring specifically

to the area which includes the subject property, referred to as West Lake Forest, the comprehensive plan states:

"In West Lake Forest, the transitional area between the business uses and surrounding residences should reflect the lower intensity of development and maintain a scale appropriate to the adjacent residential areas. Generally townhouses or other types of attached single-family dwellings would be appropriate uses for locations adjacent to the West Lake Forest Business Area."

In reviewing the minutes of the plan commission relating to the instant proposal, it appears that a vote on the rezoning was delayed several times for the reason that the commission was attempting to develop a new zoning classification which would permit the townhouse residential use suggested by the comprehensive plan. The existing GR-2 zone requested by the plaintiffs with a special use permit was apparently not favored by the commission because it allowed a density of up to 14 units per acre. Defendant's witness, Charles Crook, Lake Forest director of planning and development, testified, however, that the density could have been limited to the four units per acre proposed by the plaintiffs by virtue of the special use permit which would have been issued in conjunction with the rezoning to GR-2. Consequently, it appears to us that an appropriate Lake Forest zoning classification, albeit not ideal, existed which would have permitted development of the subject property as proposed. After referral for review of the plan commission's recommendation to deny the rezoning request to a committee, the city council accepted the commission's recommendation and denied the plaintiffs' request for rezoning.

In our view the controversy is more of a matter of "splitting hairs" than a fair and legitimate difference of opinion. Prior to the adoption of the Official Comprehensive Plan, commercial zoning was approved by the defendant for plaintiffs' entire tract, but such development never occurred. The recommended townhouse zoning certainly now must be viewed as a less intense and more desirable use. Indeed, the defendant's experts agreed that a townhouse development on the property, save for the plaintiffs' 1½-acre residence, would be the "highest and best use" of the property. However, defendant's experts did not, nor do we, equate "highest and best use" with reasonableness. We determine reasonableness upon the facts of each case, with reference to the criteria set forth above in *Hoffmann v. City of Waukegan* (1964), 51 Ill. App. 2d 241, 244.

Defendant argues that the court has no power to divide the property, and that if any part of the zoning is valid, then the whole is valid. Such an argument is inherently contradictory for it contemplates that we view the property as divided parts. Even if we were to view the property as such,

which we do not, we note the major portion of the property is zoned R-4, which zone includes the plaintiffs' residence, and the smaller portion is zoned GR-2, but without the special use permitted. As such, we must consider the validity of the zoning as it applies to the whole, and our finding of validity or invalidity applies to the whole, not any part thereof.

■■ ■ Plaintiffs do not controvert defendant's argument that a loss of profit as a consequence of the existing zoning is not determinative of the validity of the zoning. Such loss is, however, a material factor, since the extent of such loss must be weighed against the degree of public benefit obtained by retention of the existing zoning. The less substantial the relationship of the zoning to the public health, safety, comfort, morals and welfare, the more likely the zoning is invalid and the more significance the diminution in value is given as one of the criteria of invalidity. Additionally, as plaintiffs correctly point out, the confiscatory effect of zoning has no reference to the amount originally paid for the piece of property. Rather, it is evidenced by the difference between the fair cash market value of the property as presently zoned with what that value would be if the property were put to the proposed use. (*La Salle National Bank v. City of Park Ridge* (1961), 23 Ill. 2d 239.) Plaintiffs' experts estimated the difference to be $200,000; defendant's expert estimated it to be $112,000. Both estimates reflect a sizable difference between the present and the potential value of the property. We find wholly unpersuasive defendant's argument that the plaintiffs created their own dilemma since they knew what the zoning was when they bought the property, and that plaintiffs' alleged economic hardship under the current zoning is not now entitled to consideration. The cases relied on by the defendant in support of this proposition, *Parkway Bank & Trust Co. v. County of Lake* (1979), 71 Ill. App. 3d 421, *Singer v. City of Highland Park* (1975), 31 Ill. App. 3d 1071, *Lapkus Builders, Inc. v. City of Chicago* (1964), 30 Ill. 2d 304, *Bolger v. Village of Mount Prospect* (1957), 10 Ill. 2d 596, and *Jacobson v. City of Evanston* (1956), 10 Ill. 2d 61, are easily distinguished from the facts of the instant case. Plaintiffs purchased the largest portion · of the property in 1950 and acquired the remainder in 1966. It was purchased for and was developed as the site of their own residence, not with the hope of securing rezoning, then a quick, profitable resale.

Based on our review of the record, we conclude the trial court's finding—that plaintiffs failed to prove that the existing zoning was invalid, and that the legislative judgment of the city as to the zoning of the property must stand because there is a legitimate difference of opinion as to the reasonableness of the present zoning—is against the manifest weight of the evidence, and we reverse. As we noted above, the legitimacy of the controversy is undercut substantially by the fact that the

defendant does not debate the desirability of the use proposed in so far as it applies to 6½ of the eight-plus acres involved. It urges that the maintenance of the R-4 zoning is reasonable as applied to the remaining 1½ acres (and, consequently, as to all of the property), because then the plaintiffs' residence will absorb the "adverse impact" and will act as a "buffer" between the proposed use and the houses directly to the east and the north. We doubt, though, that such a buffer is necessary, or would, in fact, be a buffer, since the townhouse use proposed is itself traditionally meant to be, and in our view adequately would be, a buffer between the proximate single-family residences and the more intense business and public uses to the west and north of the subject property.

Even assuming, *arguendo*, that a legitimate difference of opinion does exist, we believe the plaintiffs have presented enough evidence to rebut the presumption of validity. By retaining the current zoning, approximately five single-family residences in the R-4 zone and six apartments in the GR-2 zone could be constructed. However, the first offer plaintiffs received for the property in 1973 contemplated a commercial use. There was no evidence that plaintiffs at any time after that offer received any other offer for any less acreage than all of the property for any purpose which would have been permitted under the R-4 zoning. We may therefore infer that since at least 1973 the property has not been desirable for single-family detached residential purposes. Unless able to be developed in some other fashion, the property will likely remain vacant under the present zoning. Plaintiffs' experts testified that development of the property as proposed in the instant petition would have an appreciative and stabilizing effect upon the adjacent properties since the uncertainty as to the future of the vacant property would be favorably resolved in a low-key, low-density and appropriately transitional manner. Defendant's experts testified contrarily that the development would have an adverse impact upon adjacent properties, but did not specify the type or the extent of the impact. Plaintiffs presented evidence that the development proposed would generate more traffic than the 11 units which could be constructed under existing zoning, but under either the existing or requested zoning the increase in traffic would not be a significant adverse factor. Additionally, the anticipated $180,000-per-unit selling price would assure an aesthetically pleasing development and would broaden the assessed valuation base, which would increase tax revenues to the city and its other related taxing districts such as the school district. The project would add about 22 grade school and seven high school children to the district. The evidence presented by the plaintiffs showed a community need for the type of housing units proposed, and the proximate location of the railroad commuter station renders the

plaintiffs' property particularly suitable for the use proposed. The looped utility system proposed for the development is an advantageous design which promotes sufficient water pressure to assure firefighting capability and which generally enhances water pressure levels for domestic and firefighting uses throughout the community utility system. The enlargement of the present pond will provide greater water retention capabilities and will decrease storm water run-off volume onto nearby properties.

■■ The fact defendant presented some conflicting expert testimony does not require that we find plaintiffs' proof failed to overcome the presumption of validity. (*Fay v. City of Chicago* (1979), 71 Ill. App. 3d 603.) In sum, it is our belief that the manifest weight of the evidence demonstrates that the present zoning not only bears no substantial relationship to the public health, safety, comfort, morals or welfare, but that the proposed development would actually be beneficial to the public interest. In this regard, we find it significant, although not determinative of course, that none of the adjacent property owners appeared at the public hearing to protest the proposed rezoning. *Fay v. City of Chicago* (1979), 71 Ill. App. 3d 603, 609; *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 952.

Accordingly, the judgment of the circuit court of Lake County is reversed and remanded for entry of a judgment for the plaintiffs for the use proposed. *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 379, permits the trial court to frame its judgment with reference to the record before it in order to avoid any further litigation, and to assure that the reasonable use proposed is the use which will be effectuated.

Judgment reversed and cause remanded for entry of an order consistent with this opinion.

SEIDENFELD, P. J., and NASH, J., concur.