(Nos. 68382, 68450 cons.—

LAKE FOREST CHATEAU, INC., Appellee and Appellant, v. THE CITY OF LAKE FOREST, Appellant and Appellee.

*Opinion filed November 22, 1989.—Rehearing denied January 29, 1990.*

MORAN, C.J., took no part.

Murray P. Conzelman, of Conzelman, Schultz, Snarski & Mullen, of Waukegan, and Thomas H. Compere, of Lake Forest, for appellant and appellee City of Lake Forest.

Robert Marks, of Marks, Marks & Kaplan, Ltd., of Chicago, for appellee and appellant Lake Forest Chateau, Inc.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Lake Forest Chateau, Inc., brought this action against defendant, City of Lake Forest, in the circuit court of Lake County, seeking a declaratory judgment that certain increased fees connected with building permits and other costs, which plaintiff paid under protest, did not apply to plaintiff's townhouse development, and seeking to recover the difference between the original and increased fees. The circuit court denied plaintiff's motion for summary judgment and granted defendant's motion for judgment on the pleadings. The appellate court reversed (178 Ill. App. 3d 917, 919), and remanded the cause to the circuit court for a determination of what portion of the allegedly improper additional fees defendant would be obligated to refund to plaintiff (178 Ill. App. 3d at 923). We granted and consolidated both parties' petitions for leave to appeal (107 Ill. 2d R. 315).

In early 1978, plaintiff sought to construct a townhouse development on property it owned in the City of Lake Forest. At that time, the property was zoned for single-family homes. Plaintiff petitioned defendant for the rezoning of its property and applied for a special use

permit under defendant's zoning ordinance. When defendant was slow in acting on the petition, plaintiff, in September 1978, filed an action contesting the validity of the zoning ordinance as applied to the property and seeking to establish the reasonableness of the proposed development. Eventually, in March 1979, defendant denied the petition.

In August 1979, the circuit court entered judgment for defendant, and plaintiff appealed. The appellate court reversed and ruled that the zoning ordinance as applied to plaintiff's property was unconstitutional and the proposed townhouse development was a reasonable use of the property. (*DeMarie v. City of Lake Forest* (1981), 93 Ill. App. 3d 357, 363-65.) We denied defendant's petition for leave to appeal to this court (85 Ill. 2d 564), and the appellate court issued a mandate to the circuit court on November 30, 1981. On December 14, 1981, the circuit court entered a judgment order in accordance with the appellate court's decision which required defendant to allow the townhouse development and to issue the proper building permits. 178 Ill. App. 3d at 919.

Defendant, however, between November 30 and December 14, 1981, adopted ordinances which substantially increased the building permit fees, water connection and tap-on fees, and public park contributions for the City of Lake Forest. Plaintiff objected to the increase in fees, but paid the new fees under protest when defendant refused to issue the building permits unless plaintiff paid the new fees. The difference in cost to plaintiff was $73,395.

Plaintiff then filed suit in the circuit court again, seeking a declaration that the new and increased fees would not apply to the townhouse development. It also sought to recover the difference between the old and new fee schedule, which defendant forced it to pay in order to begin construction. In ruling in defendant's favor,

the trial court held that defendant "did not act in an unfair, unconstitutional or unjust manner in applying its increased fees to plaintiff's project." 178 Ill. App. 3d at 917.

The appellate court, in reversing the judgment of the circuit court, relied on *Fiore v. City of Highland Park* (1968), 93 Ill. App. 2d 24. *Fiore*, like the case at bar, involved a zoning dispute that the plaintiff had to appeal twice. First, the appellate court in *Fiore* ruled that the defendant city's zoning classification of the plaintiff's property was unconstitutional. (*Fiore v. City of Highland Park* (1966), 76 Ill. App. 2d 62, 71-76.) After this court denied the city's leave to appeal (35 Ill. 2d 631), it passed an ordinance designed to rezone the plaintiff's property back to the same single-family status that the appellate court declared unconstitutional in the first appeal. (*Fiore*, 93 Ill. App. 2d at 29.) In the second appeal, the *Fiore* court held that the city improperly used the doctrine of separation of powers as an excuse to frustrate the opinion and mandate of the reviewing court after it had submitted its case to that court for decision. The *Fiore* court further stated that the legislature cannot pass legislation after the adjudication of a cause of action by a reviewing court in order to control or affect the result of the litigation. *Fiore*, 93 Ill. App. 2d at 33-34.

The appellate court saw a direct correlation between the result in *Fiore* and the case at bar. The court held that defendant had sought to control the result of the zoning litigation between the parties after it had been adjudicated by the courts. In particular, the court maintained that the judgment of the *DeMarie* court established plaintiff's right to use the property in question for a townhouse development. After further attempts by the defendant to appeal the judgment failed, the appellate court issued its mandate to the circuit court. However,

before the circuit court could act in compliance with the mandate, defendant took action that made it much more costly for plaintiff to exercise the rights established by the *DeMarie* judgment. The appellate court determined that plaintiff was entitled to all the building permits and services needed to begin the townhouse construction at the rates that existed on November 30, 1981, the date the court issued its mandate. (178 Ill. App. 3d at 923.) However, realizing that municipalities often must raise the fees they charge for city services, the appellate court remanded the cause to the circuit court to determine what portion of the additional fees defendant should refund, because it was unlikely that plaintiff would have made a request for all the building permits at one time. 178 Ill. App. 3d at 923-24.

The appellate court opinion in this case also included a dissent. (178 Ill. App. 3d at 924 (Woodward, J., dissenting).) The dissent pointed out that the *DeMarie* court's holding and the mandate which it issued to the circuit court pertained only to the issue of zoning, and therefore raising the building permit fees could not have adversely affected the plaintiff's rights as established by that court. (178 Ill. App. 3d at 925.) The dissent was also critical of the majority's failure to recognize the legitimacy of the fee increases (178 Ill. App. 3d at 926-27) and of its remand of the cause despite there being no standard for determining which of the allegedly improper new permit fees defendant would have to refund to plaintiff. 178 Ill. App. 3d at 927.

The issue on appeal to this court is whether defendant, by forcing plaintiff to pay substantially higher fees for building permits and other construction-related costs, deprived plaintiff of rights it obtained in the judgment of the appellate court which declared that the zoning classification of plaintiff's property was not reasonable.

We first note that no judgment of this court, nor of any other, to our knowledge, has ever declared that a person can have a right to purchase a license or permit for a certain price or fee, unless the ordinance that controls the level of such a fee is unreasonable (*Arends v. Police Pension Fund* (1955), 7 Ill. 2d 250, 253 (regulatory license must bear some reasonable relation to the cost of regulation); *Condon v. Village of Forest Park* (1917), 278 Ill. 218, 225 (license fee must bear some reasonable relation to additional burdens the licensed activity places on municipality and the cost to municipality for providing services); *City of Chicago v. Gunning System* (1905), 214 Ill. 628, 642 (license fee held invalid because it was so unreasonably high it effectively prohibited operation of plaintiff's business)), arbitrary (*City of Chicago v. R. & X. Restaurant, Inc.* (1938), 369 Ill. 65, 71 (license fee void if a "palpably arbitrary exercise" of power)), or discriminatory (*City of Carrollton v. Bazzette* (1896), 159 Ill. 284, 289-90). We also note that plaintiff admitted to both the appellate court (178 Ill. App. 3d at 926 (Woodward, J., dissenting)) and this court that defendant's actions in raising the fees were not illegal or improper, and there is nothing in the record to indicate any fraud, malice, or discriminatory intent on the part of defendant. Because the purpose of charges such as building permit fees is to help defray the cost a municipality or other governmental entity bears for providing services to the builder or developer of the property, it is not uncommon for a city comparable to defendant to raise those fees when the cost of providing services rises. (See *Fiore*, 93 Ill. App. 2d at 37.) Therefore, absent some accusation on the part of plaintiff that defendant's action in increasing the building permit fees and the other construction costs was improper, we hold that plaintiff has no right to the lower fees.

Plaintiff counters this argument by contending that, but for the unreasonable denial of its request for the rezoning of its property, it would have been able to apply for and receive the building permits at the original lower cost. Further, plaintiff claims it was damaged when its application for rezoning was denied and therefore deserves restitution for the damages it suffered in not being able to begin construction at that time. These damages, plaintiff maintains, are the increased fees it would have avoided had defendant properly allowed it to apply for the building permits in 1978 or 1979.

Plaintiff misunderstands the nature of the authority of a municipality to determine the amount it will charge for city services, and the discretion it possesses in changing that amount. The State has delegated to municipalities the power to pass all necessary police ordinances. (Ill. Rev. Stat. 1987, ch. 24, par. 11—1—1.) These ordinances must reasonably be related to the health, morals, safety or general welfare of the community. (*Haskell v. Howard* (1915), 269 Ill. 550, 552-53.) They must also be reasonably necessary and the municipality must exercise its authority reasonably. (*Gunning System*, 214 Ill. at 640.) However, if the municipal regulation actually amounts to an invasion of an individual's property rights, the court has a duty to strike it down. *Condon*, 278 Ill. at 223.

Implicit in a municipality's regulatory police power is the power to charge license or permit fees. (*Concrete Contractors' Association of Greater Chicago v. Village of La Grange Park* (1958), 14 Ill. 2d 65, 70.) The cost of the license or permit must reasonably relate to the city's burden in regulating the business or occupation. (*American Baking Co. v. City of Wilmington* (1938), 370 Ill. 400, 403.) A review of the record in this case reveals that the ordinances that defendant enacted to raise the building permit and other fees were reasonable and nec-

essary to provide the funding needed to adequately provide city services to plaintiff; and the raised fees did not invade plaintiff's property rights.

More importantly, the record fails to reveal any connection between defendant's wrongful conduct and the higher construction-related fees. As we have already noted, in our past decisions regarding permit or license fees, we have only granted relief when the municipality had set the license or permit fees wrongfully or unfairly. In this case, however, the defendant enacted the higher fee ordinance in relation to its fiscal needs. Defendant also charged all builders and developers the higher fees; there is nothing to indicate that defendant intentionally aimed the fee increase at plaintiff. Despite the seemingly purposeful timing of the fee increase, there is nothing in the record that shows defendant used the higher fees to discriminate against or defraud plaintiff, or as revenge for the adverse judgment the appellate court rendered in plaintiff's favor. Actually, as we have already noted, plaintiff admits that defendant properly raised the fees. There is no proof of, and plaintiff made no attempt to prove, a causal connection between the higher fees and the improper denial of plaintiff's request for rezoning, or the judgment rendered against defendant in the *DeMarie* case. Therefore, we see no reason to declare that the higher fees defendant charged plaintiff were improper.

Plaintiff's contention that it was damaged at the time defendant denied its request for rezoning is also incorrect. Plaintiff relies on Federal cases in which landowners were denied a reasonable use of their land because of a continued application of a zoning classification later found by the court to be constitutionally invalid as applied to that property. Each of these cases allowed the landowner to recover damages from the time the municipality denied the request for rezoning up to the time the court granted relief. *First English Evangelical Lu-*

*theran Church v. County of Los Angeles* (1987), 482 U.S. 304, 306-07, 96 L. Ed. 2d 250, 258, 107 S. Ct. 2378, 2381; *Wheeler v. City of Pleasant Grove* (11th Cir. 1987), 833 F.2d 267, 271.

These cases are distinguishable from the situation in the case at bar because they involve regulatory takings. In *First English Evangelical*, the county enacted a temporary ordinance prohibiting any construction in an area ravaged by floods, effectively preventing the landowner from repairing and using the buildings on property it owned in the flood area. The United States Supreme Court held that this ordinance deprived the landowner of all use of its property, and the Court required that the county compensate the landowner. *First English Evangelical*, 482 U.S. at 306-07, 322, 96 L. Ed. 2d at 258-59, 268, 107 S. Ct. at 2381-82, 2389.

In *Wheeler*, the landowners had agreed to sell their property to a developer, who planned to erect an apartment complex. The city zoning ordinance allowed for this purpose, and the local planning commission issued a building permit to the developer, who then began work in preparation for construction. However, strong community opposition to the apartment complex arose. The city, therefore, passed an ordinance which outlawed apartment complexes. The court, relying on *First English Evangelical*, determined that the ordinance was a temporary regulatory taking, and remanded the cause to determine the amount of damages. *Wheeler*, 833 F.2d at 268, 270-71.

Unlike the situations in *First English Evangelical* and *Wheeler*, there is no regulatory taking in the case at bar. In each of these Federal cases, the government acted in such a way as to temporarily deprive the landowners of the total use of their property. In *First English Evangelical*, the flood regulations effectively made the property totally useless to the owner. In *Wheeler*,

the landowners had altered their situation by starting construction in substantial reliance on the zoning regulations and an issued building permit. (See *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 522; *Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570, 576-77.) Also, by issuing the building permit, the city in *Wheeler* had created a property right that it could not take away without just compensation. See *Wheeler*, 833 F.2d at 269-70, 270 n.3; see also *Pioneer Trust*, 71 Ill. 2d at 523-24 (vested property right created in a zoning classification due to municipal encouragement of a particular use, the issuance of a building permit, and completed construction in compliance with the zoning classification).

Neither of these situations exists in the instant case. Despite its inability to acquire the zoning it desired, plaintiff still had possession and use of its land. Plaintiff could have built in accordance with the existing zoning classification, applied for a different type of rezoning, applied for a different special use permit under the existing zoning, or sold the property. Also, defendant did nothing to take temporary control of plaintiff's land, constructively or otherwise. Plaintiff did not materially alter its position in reliance on defendant's actions (see *Cos Corp.*, 27 Ill. 2d at 576-77), as the plaintiffs in the *Wheeler* case had done. Plaintiff has also failed to allege any damages other than the raised fees, such as lost profits, lost opportunities to sell, or a decline in the value of the property. Therefore, because defendant's actions were not intrusive enough to rise to the level of a taking (see *Pennsylvania Coal Co. v. Mahon* (1922), 260 U.S. 393, 415, 67 L. Ed. 322, 326, 43 S. Ct. 158, 160 (if government regulation is unreasonable interference with owner's use of property, it is a taking)) and because the only "loss" plaintiff suffered was an increase in prices (which any developer would "suffer" if it

planned to start construction before the fee increase, but was unable to apply for a permit until afterwards), the principles of *First English Evangelical* do not apply to this case.

Finally, the appellate court's reliance on *Fiore* and similar cases is misplaced. The cases cited by the appellate court majority (*Fiore*, 93 Ill. App. 2d 24; *First National Bank v. Village of Skokie* (1975), 35 Ill. App. 3d 545; *Rubin v. City of Rockford* (1938), 296 Ill. App. 650 (abstract of opinion)) all deal with municipalities that denied a request for a zoning variance or a permit. In each case, after the court entered judgment against the municipality, requiring the requested zoning or permit, the municipality enacted an ordinance to prohibit the very zoning classification or permit to which the appellate court had just declared the landowners had a right. *Fiore*, 93 Ill. App. 3d at 33-34 (ordinance which purported to rezone property in question back to its original single-family classification after appellate court had declared such a classification unconstitutional was improper); *First National Bank*, 35 Ill. App. 3d at 549 (attempt to rezone property to deprive owner of judicially secured relief was improper); *Rubin*, 296 Ill. App. at 650 (abstract of opinion) (city's attempt to eliminate junkyards from within city limits after court ordered city to issue plaintiff permit to operate junkyard was improper).

The case at bar is distinguishable. In each of the cases the appellate court relied upon, the defendant sought to directly nullify the substantive rights the plaintiff possessed by virtue of the judgment entered against the defendant. In the instant case, however, the initial litigation between these parties, which reached finality in the *DeMarie* court's judgment, related to plaintiff's rights in the zoning of its property, and determined that plaintiff had the right to construct a townhouse development on its property. The only issues the *DeMarie* court

140

addressed were questions of zoning. (See *DeMarie*, 93 Ill. App. 3d at 360-65.) The question of building fees never arose in that case. Despite the higher fees, plaintiff has begun and has a right to continue to construct townhouses on its property. The higher fees in no way prohibit the plaintiff from exercising its right to use its land as it wishes. Therefore, the higher fees did not adversely affect the rights established by the *DeMarie* court. See 178 Ill. App. 3d at 925 (Woodward, J., dissenting), citing *PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 305 (decision of reviewing court that reverses judgment is final only upon questions decided, and circuit court, on remand, can only act by conforming with reviewing court's judgment).

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*