MARY WELLS *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF LIBER-
TYVILLE *et al.*, Defendants-Appellees.

Second District   No. 2—85—0981

Opinion filed March 13, 1987.

William G. Wells, of Santa Monica, California, appellant *pro se.*

Gerald C. Snyder, Jr., of Snyder, Clarke, Dalziel & Johnson, of Waukegan, and Dennis A. Brebner, of Gurnee, for appellee Charles W. Matthews.

Michael J. Boyd, of Overholser, Flannery, Hoover & Boyd, of Libertyville, for appellee Village of Libertyville.

JUSTICE HOPF delivered the opinion of the court:

This appeal arises from the rezoning of a parcel of real estate, from a residential classification to a business classification, by defendant village of Libertyville (the village). Plaintiffs are owners of residential property adjoining on either side of the subject property. The trial court denied plaintiffs' complaint for declaratory and injunctive relief from the rezoning. On appeal, plaintiffs, Mary and William Wells, assert that they were denied due process because the village did not give them personal notice of the hearing on rezoning of the property. All plaintiffs contend that the zoning amendment ordinance was invalid because it was arbitrary and unreasonable.

In 1983, defendant, Charles Matthews, signed a contract for the purchase of property (Matthews property) located at 137 West Park Avenue (also known as State Route 176) in Libertyville. The property, a single-family residence, had been on the market for 4½ years. During that time plaintiff, William Wells, had made at least one unsuccessful offer to purchase the property. The only other offers were made by an architect and by Matthews, both of whom wished to use the property as an office. Matthews' offer was contingent upon rezoning from a multi-family residential zoning classification of R-8 to a business classification of B-3. During the last six months before Matthews' offer was accepted, the listing realtor had taken at least 30 prospective buyers through the house. No offers were made for resi-

dential use.

Matthews, who wished to locate an office for his employment consultant business on the property, filed a petition for rezoning with the village. In addition to office uses, the B-3 zoning he sought allowed such uses as barber shops, beauty shops, and medical clinics. Pursuant to statute (Ill. Rev. Stat. 1983, ch. 24, par. 11—13—14), notice of a public hearing regarding rezoning was published in a local newspaper by the village. In accord with its long-standing custom of personally notifying owners of property near a proposed rezoning, the village also mailed notices to neighbors of the Matthews property. A notice was mailed to and received by the plaintiffs, Donofrios, who live in a single-family home directly east of the Matthews property. No such notice was mailed to the Wells, whose single-family home is located immediately west of the subject property.

Matthews appeared at the rezoning hearing before the village plan commission in support of his petition. No one appeared in opposition. The Donofrios, who were unable to attend the hearing in person, mailed a letter to the village expressing their objection to the proposed rezoning. This objection did not reach the village planning director and was not presented to the plan commission at the public hearing. The plan commission recommended that the petition be granted, and on November 8, 1983, the village board of trustees adopted an ordinance rezoning the property from R-8 to B-3. Matthews then completed the purchase of the property and opened an office in the former residence.

In February 1984 plaintiffs filed a petition to rezone the Matthews property back to an R-8 residential classification. After a hearing, the plan commission, and ultimately the village board, denied that petition. Plaintiffs then filed the instant suit.

Trial testimony established that the Matthews property is located in the first block of West Park Avenue west of Milwaukee Avenue. Milwaukee Avenue is the main north/south thoroughfare through the village of Libertyville, while Park Avenue is a main east/west route. Both Milwaukee and West Park Avenues are heavily traveled roads. Milwaukee Avenue, both north and south of West Park, has been developed with strip commercial and business uses on both sides of the street. Park Avenue, east of Milwaukee, is also primarily business, but ultimately culminates in industrial uses near the eastern edge of the village. The area of West Park Avenue, west from Milwaukee to Stewart Avenue, the first street west of Milwaukee Avenue, has a variety of both uses and zoning classifications. Specifically, on the southwest corner of West Park and Milwaukee is a gas station with a de-

tached car wash (zoned B-2, business). Going directly west on the south side of West Park is a former single-family residence which has been zoned and used for offices, including a State Farm Insurance office, for some time (zoned B-3, business); another former single-family residence which was rezoned and converted into offices subsequent to the Matthews property rezoning (zoned B-3, business); the Donofrio home (zoned R-8, residential); the Matthews property (zoned B-3, business); and the Wells' home (zoned R-8, residential).

On the north side of West Park Avenue, west from Milwaukee Avenue, is another gas station (zoned B-2, business); a funeral home (zoned B-2, business); a parking lot for the funeral home (zoned R-8, residential); and an apartment building (zoned R-8, residential) which extends to the corner of Stewart Avenue. West of Stewart Avenue on West Park the uses are primarily multi-family and single-family residential (R-8 zoning), and schools, with the exception of one business use (also business zoning) located approximately one-half mile west of Stewart. The next business uses are about one mile west of Stewart. To the south of the Donofrio, Matthews, and Wells property is an abandoned railroad right-of-way, now used as a bike trail, followed by a residential area.

The plaintiffs testified that their properties had been adversely affected by the rezoning of the Matthews property in that the neighborhood was no longer quiet, at least several cars were regularly parked on the property, sometimes the cars drove on the Wells property, and at night the business caused light pollution.

Plaintiffs' city planning expert, Norman Drummond, testified that the rezoning was both inconsistent with the village comprehensive plan and incompatible with surrounding uses and zoning; that development along West Park Avenue is transitional between single-family and multi-family residential and has mixed uses; that the highest and best use for the property would be to assemble it with the Wells and Donofrio properties and develop it as a multi-family building. He also testified that R-8 zoning is the most intensive multi-family classification in the village and that it is not unusual for business zoning to radiate out in all directions from the four corners of a major intersection.

Plaintiffs' expert real estate appraiser, Herbert Harrison, testified that plaintiffs' properties would be worth less zoned for business than for residential purposes; that there was no need in the village for additional office space, but that there was a market for selling older homes for office use; that the value of plaintiffs' properties as single-family residences was not adversely affected by their proximity to the

intersection of Milwaukee and West Park Avenues, nor would it be so affected if a five-unit apartment building were built on the Matthews property. Harrison, like Drummond, testified that the highest and best use of the property would be to assemble it with neighboring property and build an apartment building and that plaintiffs' property value was diminished because assemblage was no longer possible.

Defendant Matthews' expert real estate appraiser testified that plaintiffs' property would have a higher value if rezoned to business; that the highest and best use of the property would be for business, particularly offices or retail; that there was a demand in the village for houses in the price range of plaintiffs' properties; and that the business use of West Park Avenue is enhanced because the street is a main thoroughfare in the village.

Leslie Pollock, an expert city planner, testified for the village. He had been hired by the village in late 1983 to update its comprehensive plan but had not been consulted regarding the rezoning of the Matthews property. He testified that he had prepared an interim plan dealing primarily with land use on the village's periphery, not a plan to provide lot-by-lot land use guidance. He did not believe the rezoning conflicted with his interim plan or that it adversely impacted the plaintiffs' property. In Pollock's opinion, the block of West Park Avenue between Milwaukee and Stewart Avenues drew its character from the intersection of Milwaukee and West Park, and the logical western boundary of business zoning on West Park Avenue would be Stewart Avenue. Finally, according to Pollock, the most appropriate use of the Matthews' property would be for office use or as part of a larger multi-family building.

Matthews' city planning expert, Lane Kendig, testified that the trend of development on West Park Avenue between Milwaukee and Stewart is conversion of single-family residences to some type of commercial use. Kendig, like Pollock, thought the primary characteristics of the area were drawn from the intersection of Milwaukee and West Park Avenue and that the rezoning would not adversely affect the value of other property in the area. In his opinion, the highest and best use of the property would be conversion of the existing structure for office use.

Based on the evidence, the trial court found, generally, that the Wells had not been denied due process rights by the village's failure to give them personal notice of the rezoning hearing; that rezoning the Matthews property to a business use would not be inconsistent or incompatible with the existing uses, zoning classifications, or basic character of the area; that the area was not well-suited to single-fam-

ily residential dwellings; that rezoning would not only help to preserve the basic character of the neighborhood but would also enhance the value of plaintiffs' properties; and that rezoning would serve the public good. The court concluded that the ordinance adopted by the village was not arbitrary or capricious as to plaintiffs. Accordingly, the trial court denied plaintiffs the relief they sought. This appeal followed.

Plaintiffs first assert that the failure of the village to mail them actual notice of the rezoning hearing on the Matthews property denied them due process, and they urge us to dispose of this matter on the issue of insufficient notice. However, plaintiffs have failed to present adequate grounds to enable us to do so.

There does not appear to be any dispute that notice of the rezoning was controlled first and foremost by the zoning provisions of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—13—14). Those provisions require only that notice of the rezoning hearing be published in one or more newspapers published in the municipality or one or more newspapers of general circulation within the municipality. (Ill. Rev. Stat. 1983, ch. 24, par. 11—13—14.) While plaintiffs do not contest that the village properly published notice of the hearing before the planning commission, they insist that in this case, notice by publication was not enough.

The village acknowledges that it did not mail to the Wells actual notice of the public hearing on rezoning the Matthews property. The village also agrees that this failure to notify the Wells was a departure from the usual and long-time village practice of notifying neighboring property owners when a rezoning hearing is scheduled. It is plaintiffs' position regarding this matter that the village, by establishing a tradition of sending notices of rezoning hearings, has created in neighboring property owners a due process right to those notices. We disagree.

It has been repeatedly held by Illinois courts that the statutory provisions for notice by publication of zoning ordinance amendment proceedings satisfy the requirements of procedural due process and that due process does not require personal notice of such proceedings to adjacent property owners. (*Bohan v. Village of Riverside* (1956), 9 Ill. 2d 561, 566, 138 N.E.2d 487; *National Boulevard Bank v. County of Will* (1983), 112 Ill. App. 3d 608, 609-10, 445 N.E.2d 891; *Rutland Environmental Protection Association v. Kane County* (1975), 31 Ill. App. 3d 82, 334 N.E.2d 215, *cert. denied* (1976), 425 U.S. 913, 47 L. Ed. 2d 764, 96 S. Ct. 1510; *Village of Riverwoods v. County of Lake* (1968), 94 Ill. App. 2d 320, 326-27, 237 N.E.2d 547.) Plaintiffs con-

tend, however, that this case is controlled by *American Oil Corp. v. City of Chicago* (1975), 29 Ill. App. 3d 988, 331 N.E.2d 67, and insist that notice by publication was not sufficient. The Wells' reliance on *American Oil* is misplaced.

Plaintiffs in *American Oil* owned corner property in the city which was zoned for commercial use. One owner wished to construct a gas station on the property. In order to secure driveway permits, however, the owner first assured the local alderman and local residents, in writing, that no other gas station would be built at that corner and that the station to be built would be properly designed and landscaped. After securing the alderman's approval, the owner received a construction permit, and the gas station was built.

Subsequently, at the behest of some residents, the alderman introduced an ordinance changing the zoning of the subject property to a residential classification. Notice of the hearing on rezoning was published on page 67 of a metropolitan daily newspaper. The notice contained neither the names of the property owners nor the address of the property, but did list the streets bounding the area. Actual notices of the hearing were placed in the mailboxes of property owners within 150 feet in each direction of the property. No such actual notice was delivered to plaintiffs.

The local alderman was the only witness at the rezoning hearing, and he did not mention that a gas station had recently been built on the property. The ordinance changing the zoning was adopted by the city council. At trial, the testimony showed that the rezoning had substantially reduced the value of the property.

On these facts the *American Oil* court found the notice by publication to be inadequate for purposes of due process. The court cited *Schroeder v. City of New York* (1962), 371 U.S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279, and *Mullane v. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652, for the proposition that notice by publication is not enough in cases where a person's legally protected interests are directly affected by the legal proceedings and the person's name and address are known or easily discerned. The *American Oil* court found the notice before it to be "nothing more than a mere feint" because the only notice to plaintiff was found in the back pages of a city newspaper. Such notice was not reasonably calculated to reach those who should have been notified in order to give them an opportunity to be heard as required by *Milliken v. Meyer* (1940), 311 U.S. 457, 85 L. Ed. 278, 61 S. Ct. 339. The court noted that defendants knew very well where to reach plaintiffs and concluded that due process required actual notice to them. The rezoning ordinance was

held invalid.

While *American Oil* held that due process required actual notice to the affected parties, it must be noted that the court found the statutory notice-by-publication requirement "constitutionally insufficient *under the facts of the case at bar.*" (Emphasis added.) (*American Oil Corp. v. City of Chicago* (1975), 29 Ill. App. 3d 988, 991, 331 N.E.2d 67.) The facts of *American Oil* are altogether different from the facts of the case now before us. Unlike plaintiffs in *American Oil*, plaintiffs here are not owners of the property directly affected and do not have a legally protected interest in that property. They are merely adjoining property owners. Even in *Schroeder v. City of New York* (1962), 371 U.S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279, and *Mullane v. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652, which were relied on by the *American Oil* court, the plaintiffs' interests were *directly* affected by the proceedings therein. *Schroeder* involved the rights of an owner whose property was condemned, while *Mullane* dealt with the rights of beneficiaries of a trust fund. The absence of any direct interest by plaintiffs in the Matthews property distinguishes this case from *American Oil*.

In addition, there is no indication that the published notice was deficient on its face or buried in the back pages of an extensive metropolitan daily, as was the notice in *American Oil*. Nor is there any allegation of either an intent to deprive plaintiffs of actual notice while giving such notice to plaintiffs' neighbors or a deliberate attempt to mislead the local plan commission at the public hearing, such as may be implied in *American Oil*. Thus, while it is uncontested that the village, like the city in *American Oil*, knew plaintiffs' names and addresses, that is where the relevant factual similarity ends. Plaintiffs/neighbors here are not in the same position as plaintiffs/owners in *American Oil*. We have found nothing in *American Oil*, and plaintiffs have pointed nothing out to us, to indicate that the process due an owner whose property is directly affected should be extended to neighboring property owners. This conclusion is particularly compelling here where there is no indication of any intent to conceal the rezoning process from plaintiffs or to mislead any of the participants in that process. Plaintiffs' argument is not well served by *American Oil*.

Despite plaintiffs' insistence that the village tradition of sending out notices somehow provided them with the right to additional due process, over and above what is provided by statute, they have neither cited precedent nor offered sound legal reasoning for their position. In fact, we do not think it has been shown that the village bound itself by this particular tradition.

Albert Kroll testified only that some time between 1945 and 1949, when he was mayor of Libertyville, a motion was unanimously passed by the village board that notice of rezoning should be sent to nearby property owners. Kroll testified as follows regarding the nature of the board action:

"In fact, I thought it was made a part of the ordinance, but it's been so long ago, I assumed that it wasn't; otherwise the present Village Board would have followed it.

Q. So as far as you know, it's not a written policy.

A. I thought it was, to be honest with you.

Q. But you don't know.

A. No."

The former mayor did not indicate that the notice policy was ever incorporated into an ordinance or even a resolution. When asked if the policy had been consistently followed up to the present time, Kroll assumed it was and noted that it had been followed during his tenure in office.

The only other significant testimony about the village notice custom came from the evidence deposition of Paul Wieczorek, the planning director for the village at the time in question. Wieczorek indicated that the policy and practice of mailing notices to neighboring property owners was in place when he came to Libertyville. He noted that the custom was neither included in an ordinance nor available in any other written form, and, while he continued the practice, he was not supplied with any standards for putting it into effect.

On these facts we conclude that the village sent out notices of rezoning hearings primarily as a courtesy to nearby property owners. This voluntary service never rose to the level of a self-imposed, legally binding obligation.

Plaintiffs did not directly argue that, because of its notice custom, the village should now be estopped from rezoning the property. However, even if their argument were so construed, it is difficult to discern how the omission of personal notice could have worked sufficient detriment to them to estop the village. At best, plaintiffs could argue only that, in reliance on the village's customary practice, they stopped reading the newspaper notices of rezoning matters. Since this is not a case where the only notice available to plaintiffs was the mailed village notice, an estoppel argument is unpersuasive.

Moreover, principles of estoppel do not usually apply to public bodies. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 17 L. Ed. 2d 806, 87 S. Ct. 957.) Estoppel is found against such bodies only in rare and

unusual circumstances. (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 12, 405 N.E.2d 1376.) The party asserting estoppel must not only have relied upon the acts of the other but also have had no way of knowing the true facts. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 17 L. Ed. 2d 806, 87 S. Ct. 957.) Since plaintiffs here had notice other than the village notice, we doubt that even a fully developed and carefully drawn estoppel argument would require a different finding on the issue of notice.

■■ ■ Plaintiffs next assert that the evidence presented at trial was insufficient to support the lower court's findings. We have carefully reviewed the evidence and conclude that the trial court did not err.

It is well settled in Illinois that a zoning ordinance is presumed to be valid and the burden of proving its invalidity is upon the party challenging such an ordinance. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625; *City National Bank v. County of Kendall* (1986), 140 Ill. App. 3d 933, 489 N.E.2d 486.) To overcome this presumption, plaintiffs attacking a zoning ordinance must show by clear and convincing evidence that the challenged ordinance, as applied to them, is arbitrary, unreasonable, and not substantially related to the public health, safety, or welfare. *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625; *Ford City Bank & Trust Co. v. County of Kane* (1983), 114 Ill. App. 3d 940, 449 N.E.2d 577.

■■ The factual considerations to be reviewed in determining the validity of a zoning ordinance as applied to a specific property were summarized in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65: (1) the existing uses and zoning of nearby areas; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which destruction or limitation of property values of plaintiffs promotes the health, morals, or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area of the subject property. Two additional factors to be considered are (1) the care with which the community has undertaken to plan its land use development and (2) the evidence or lack thereof of community need for the proposed use. *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276.

Since the trial court, in its oral judgment, dealt individually and in considerable detail with the factors mentioned above, we will not repeat that process here. Suffice it to say that the record reveals beyond doubt that the Matthews property is located in an area characterized by a mixture of zoning classifications, as well as a mixture of uses. The trend is away from single-family residences and toward more intensive uses, including both multi-family structures and office uses. None of the witnesses testified that the highest and best use of the property would be single-family residential. It is apparent that the business and commercial nature of the intersection of Milwaukee Avenue and West Park Avenue tends to affect, if not dominate, the area around it, including the block where the Matthews property is located. The heavy traffic on West Park Avenue confirms this concept. Even plaintiffs' witness, Drummond, agreed that it is not unusual for business zoning to radiate out in all directions from the major intersection.

The trend toward business uses in the first block of West Park west of Milwaukee Avenue is further affirmed by the total absence of any offers to buy the Matthews property for residential purposes, despite numerous prospective buyers during the last six months it was on the market. The fact that the only offer besides Matthews' during that time was from an architect who wanted to use the property as a combination residence/office is consistent with the uses that were already present on the block. The rezoning to B-3 was not only compatible with other uses and zoning in the area, but was especially well suited to the particular neighborhood.

■■ ■ We acknowledge that there was conflicting evidence as to the effect of the rezoning on the value of plaintiffs' property. However, the determination by the trier of fact of the credibility of the witnesses and the weight to be given testimony as to the reasonableness of a zoning ordinance will not be reversed unless it is against the manifest weight of the evidence. (*Van Duyne v. City of Crest Hill* (1985), 136 Ill. App. 3d 920, 483 N.E.2d 1307.) Here, in addition to the conflicting expert testimony, the trial court heard plaintiffs' real estate appraiser, Harrison, testify that the fair market values of the Wells and Donofrio properties, under R-8 zoning, were $76,000 and $95,000, respectively. These figures would drop dramatically, according to Harrison, if the properties were rezoned to business. Yet, there was evidence that the single-family residence directly east of the Donofrios was sold for $103,000 after it was zoned B-3. Harrison did not take this sale into consideration when analyzing the values of plaintiffs' properties. On these facts we cannot say the trial court de-

termination that rezoning the Matthews property would enhance the plaintiffs' property values was against the manifest weight of the evidence.

We agree with the trial court that there was a public need to be served by preserving the old residences for office purposes. Although there evidently was vacant office space in Libertyville, plaintiffs' witness, Harrison, agreed that there was a market for the less expensive and less intensively used space which could be created by converting residences located near Milwaukee Avenue into offices.

We also agree with the trial court that maintenance of R-8 zoning in the area of plaintiffs' properties would ultimately result in the demolition of all the older, single-family residences in order to make room for large apartment buildings. This was evident from the testimony of both plaintiffs' and defendants' experts that at least one of the highest and best uses of the Matthews property would be as part of a larger multi-family building. We believe large apartment buildings would change the basic appearance and ambience of the neighborhood far more than would either conversion of the residences to office space or the construction of new, small office buildings such as doctors' offices or barbershops, which are permitted uses in the B-3 classification.

Finally, despite differing opinions regarding conformance of the rezoning to the village's comprehensive plan, we think the evidence supports the trial court's conclusions. Although the court found that the land use plan in effect at the time of rezoning showed R-8 zoning on the Matthews property, the evidence indicated that the plan was not intended to be an inflexible control on development. Rather, it was part of an interim plan which was used as a guide while the village's comprehensive plan was being reviewed and redrawn. The interim plan focused on land use at the periphery of the village and was not meant to direct the use of individual lots throughout the town. Even the interim plan, however, reflected the multiple uses and the transitional nature of the immediate area around the Matthews property. In our view the R-8 zoning shown for the Matthews property in the land use plan was, more than anything else, a reflection of the existing zoning. And, like the trial court, we do not consider the village's deviation from that plan to be of sufficient significance to override the other factors in this case.

We conclude that the evidence, at the very least, reveals that the question of the reasonableness of the rezoning of the Matthews property to a B-3 classification is fairly debatable. In such a case, the courts will not interfere with the legislative judgment. (*Cech Builders,*

*Inc. v. Village of Westmont* (1983), 118 Ill. App. 3d 828, 830, 455 N.E.2d 817; see also *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625.) The trial court correctly decided that plaintiffs did not show by clear and convincing evidence that the Libertyville zoning amendment ordinance was arbitrary or capricious or wholly unrelated to the public health, safety, or welfare. Accordingly, plaintiffs were unable to rebut the presumption of validity afforded to the ordinance.

For the reasons stated above, the judgment of the trial court of Lake County denying plaintiffs' complaint for declaratory and injunctive relief is affirmed.

Affirmed.

LINDBERG, P.J., and NASH, J., concur.