**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION.**
File Name: 07a0346n.06
Filed: May 17, 2007

**Appeal No. 05-2277**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| FRANK ANTHONY BAUSS, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellant, | ) | COURT FOR THE |
| | ) | EASTERN DISTRICT OF |
| v. | ) | MICHIGAN, SOUTHERN |
| | ) | DIVISION |
| PLYMOUTH TOWNSHIP AND MCKENNA | ) | (Case No. 04-73858) |
| ASSOCIATES, INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: SUTTON, COOK, Circuit Judges; and, GWIN, District Judge.[*]

GWIN, District Judge:

Plaintiff-Appellant Frank Anthony Bauss ("Bauss") appeals an order of the district court granting summary judgment to Defendants-Appellees Plymouth Township ("Township") and McKenna Associates, Inc. ("McKenna"), the Township's land use consultant. In this action, Bauss challenges the Township's master plan amendment process on due process grounds. Bauss, a real estate developer and landowner, says the Township's Planning Commission impaired his property interest when it approved a correction to the Township's Future Land Use Map.

In making his claim, Plaintiff-Appellant mistakenly conflates the nature of master planning

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

-1-

with that of zoning and, in doing so, misunderstands the process due to him. Based on this misunderstanding, Bauss argues that the Township and McKenna conspired to deprive him of his due process rights when they failed to give him personal notice of a public hearing and, further, intentionally inflicted emotional distress upon him.

Bauss does not have a cognizable constitutional property interest in the Township's master planning process. Further, upon review of the relevant Michigan law, we conclude that the Township's March 25, 2004 and April 15, 2004 notices in the *Plymouth Observer* withstand Bauss's due process challenge. Absent Bauss's showing of a constitutional deprivation, we also conclude that Bauss fails to demonstrate that the Township or McKenna conspired to intentionally deny him of any of his constitutional rights or intentionally caused him emotional distress. Accordingly, we **AFFIRM** the district court's grant of summary judgment to Defendants-Appellees.

## I. Background

Master planning and zoning have different purposes and effects. Communities undertake both activities to control and direct development and land use within their jurisdiction. However, only zoning directly controls the use of property within a community. Master planning, while often encouraged by local law, does not directly affect landowners' rights to develop or use their land. In contrast to zoning, master plans provide non-binding aspirational "roadmaps" for future development.

In this case, the Plymouth Township's Planning Commission, an administrative body appointed by the Township Board, oversaw the community's master planning process, including the formulation and revision of the Township's master plan. The Planning Commission also

recommended action on re-zoning applications to the Township Board, which has legislative authority to grant a re-zoning request and change the community's zoning laws.

The Plymouth Township Board has adopted zoning laws that regulate the community's development density and land use. Relevant to this appeal, the Township's zoning classifications include R-1-H (single-family residential), R-1-S (single-family suburban), and R-2-A (multiple-family residential). The zoning classification R-1-H (single-family residential) allows for the development of two single-family homes per acre; R-1-S (single-family suburban) allows for the development of 0.8 to three single-family homes per acre; and, R-2-A (multiple-family residential) allows for the development of six to eight multiple-family dwelling units per acre.

In 1978, Frank Anthony Bauss bought a five-acre parcel of vacant land at 46410 Ann Arbor Trail, Plymouth Township, Michigan ("Ann Arbor Trail Property"). At the time of Bauss's purchase, the Township zoned the property R-1-H (single-family residential). The R-1-H (single-family residential) zoning classification permitted Bauss to develop ten single-family residential homes on the parcel. In 1978, the Township's master plan recommended the planned future use of Bauss's property as suitable for low-density residential development ("1978 Plan"). This aspirational future use, if approved, adopted, and enacted by the Township Board, would allow Bauss to develop 0.8 to three single-family homes per acre.

In 1993, the Township's Planning Commission undertook a public planning process that resulted in the Township Board adopting a new master plan (the "1993 Plan"). During this process, a drafting error resulted in the Ann Arbor Trail Property being mislabeled as R-2-A (multiple-family residential) on the 1993 Plan's Future Land Use Map. The error changed the Master Plan's map, but

did not change the legal zoning classification status of Bauss's property, which continued to be zoned as R-1-H (single-family residential).

In 1997, Bauss filed an application to re-zone his property from R-1-H (single-family residential) to R-1-S (single-family suburban) ("1997 Application"). After public notice and a hearing, the Planning Commission recommended that the Township Board grant Bauss's 1997 Application. The Board, however, tabled Bauss's 1997 Application because Bauss had not paid the Township for maintenance performed by the Township on the Ann Arbor Trail Property. For unknown reasons, Bauss did not protest the Board's decision to table the 1997 Application. On October 31, 2000, the Township closed Bauss's file for lack of action.

In late 2000, Bauss approached the Township about developing the land and discovered that his 1997 re-zoning application had not been approved. Bauss then presented his 1997 Application at a September 17, 2003 public hearing of the Planning Commission. However, based upon the drafting error in the 1993 Plan's Future Land Use Map, the hearing's participants mistakenly referred to Bauss's property as being zoned as "high-density residential." After hearing that the Master Plan arguably supported higher density development, Bauss withdrew his 1997 Application and, on September 24, 2003, filed a new application requesting that the Township Board re-zone his property from R-1-H (single-family residential) to R-2-A (multiple-family residential) ("2003 Application").

Upon receiving Bauss's 2003 Application, the Township and McKenna began to explore the mislabeling of the Ann Arbor Trail Property on the 1993 Future Land Use Map. On September 29, 2003, the Township's Director of Public Services wrote to the Planning Commission's Chairperson, Township's Community Development Director, Township's attorney, and McKenna requesting their

assistance in investigating how the designation of Bauss's property had changed from R-1-H (single-family residential) in the 1978 Plan to R-2-A (multi-family residential) on the 1993 Plan's Future Land Use Map. The Director copied Bauss on the letter that read, in pertinent part:

> I have had an opportunity to review the record regarding the Bauss rezoning. This includes the 1997 [Application] and [the 2003 Application] . . . In each case reference was made to the subject property being master planned for residential high density, 6-10 dwelling units per acre.
>
> After reviewing this matter and looking at a number of maps, it appears to me that there may have been a drafting error in regards to the subject property. Based on my review, it appears to me the residential high density classification for the adjacent condominiums was inadvertently carried to the abutting existing subdivision by the draftperson. This action would have inadvertently included the Bauss property into this classification. This action can be clarified quite quickly.
>
> I am asking each of you to look at any and all historic information you may have on the approval of the future land use plan and master plan to determine if there was discussion regarding modifying the subject property and including it into the high density classification. I find it unrealistic that such action would have taken place without discussion. Your records should assist us in clarifying this matter. Typically, the future land use map would designate those areas that are being discussed for change. There would be some historic document which identifies those areas that were being considered for change at that time.
>
> If in fact the matter was discussed by the Planning Commission and was recommended for approval after discussion, I need that back up information. If this matter was a drafting error it should be rectified.

Representatives of the Township and McKenna revisited their files and the historic record of Bauss's re-zoning applications. They found no evidence that the Township intended to re-zone the Ann Arbor Trail Property from R-1-H (single-family residential) to R-2-A (multi-family residential). After reviewing the records and the 1993 Future Land Use Map, the Township concluded that the map erroneously labeled Bauss's property as R-2-A (multiple-family residential).

At the Planning Commission's public meetings on October 15, 2003 and December 10, 2003, Defendants-Appellees discussed the mislabeling and proposed amending the 1993 Future Land Use Map. Bauss attended these meetings. At the December 10, 2003 meeting, the Planning Commission considered a proposed amendment that read, in pertinent part:

> The proposed amendment arises from a question of the future land use designation for a five-acre site located at 46410 Ann Arbor Trail (the "subject property"), which is Tax ID 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-000. The current Master Plan for the Charter Township of Plymouth (the "1993 Plan") designates the subject property for residential high-density development, 6 to 10 dwelling units per acre ("du/acre"). The plan in effect prior to the adoption of the 1993 Plan, the Future Land Use Plan, Township of Plymouth (the "1978 Plan"), designated the subject property for residential low-density development, a much lower density of 0.8 to 3 du/acre.
>
> The Township's Director of the Division of Public Services has indicated that a change to a high density designation in the future in the 1978 Plan to the 1993 Plan was an unintended oversight, by the Plymouth Charter Township Planning Commission (the "Commission").
>
> **1993 Plan Actions Suggest an Oversight.** During the formulation of the 1993 Plan, the Commission revised a February 1992 draft of the Existing Land Use Map to correct the use designation of the subject property from a high-density residential use to its actual use as vacant. However, no such correction was made to the February 1992 draft of the Future Land Use Map. We believe the commissions [sic] failure to change the Future Land Use Map was an oversight and is the basis of our proposed amendment to the 1993 Plan.
>
> **Other Planning Process Actions Support Oversight.** Based on our review, as described in detail below, we find further evidence that designation of the future land use of the subject property for high-density residential is incorrect:
>
>> **Bauss Site: One of a Kind.** The subject property is unique among the properties designated for high-density residential use in that it was not <u>used for</u>, <u>developed</u> for, <u>zoned</u> for, or previously <u>planned</u> for high-density residential use;
>>
>> **Bauss Site: Not Qualified to be Planned for High Density.** The subject property does not satisfy the majority of the policy guidance

provided in the 1993 Plan for high-density residential use;

**Minutes Do Not Support Change to High Density.** The minutes of the Township Board and Planning commission meetings make no mention of changing the future land use designation for the subject property at meetings during the formation and adoption of the 1993 Plan.

(Emphases in the original.)

At the close of the December 10, 2003 meeting, the Planning Commission sent the proposed amendment to the Township Board for that Board's review. The Planning Commission also tabled Bauss's 2003 Application until "no later than the regular Planning Commission meeting of May 19, 2004, to allow the Township an opportunity to complete the . . . amendment [of the Future Land Use Map] consistent with statutory requirements." Bauss objected, but to no avail. On December 17, 2003, the Township Board sent the proposed amendment to adjacent communities, governmental entities, and utility companies for comment.

After receiving public comment on the proposed amendment, the Planning Commission published in notice in the *Plymouth Observer* of a public hearing to be held on April 21, 2004. The notice said the Planning Commission would "consider a proposed amendment to the master plan of the Charter Township of Plymouth, Wayne County." If adopted, the proposed amendment would "change the future land use map designation of a 5-acre site described as Tax ID 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-0000, from residential high density to residential low intermediate density."

On April 21, 2004, the Planning Commission held the public hearing on the proposed amendment and, at the hearing's conclusion, approved it. Bauss did not attend the April 21, 2004 hearing. In a May 3, 2004 letter, the Township informed Bauss that the Planning Commission had

approved the proposed amendment to the Future Plan and advised him that the commission would set a public hearing on his 2003 Application for re-zoning at its May 19, 2004 meeting.

On May 18, 2004, Bauss reasserted his 2003 Application. The Planning Commission considered Bauss's request and, after public notice and a hearing on July 21, 2004, recommended that the Township Board deny Bauss's 2003 Application. The Planning Commission based its recommendation, in part, on consultation with McKenna, as well as substantial opposition from area residents. Specifically, the Planning Commission recommended that the Township Board deny Bauss's 2003 Application for the following reasons:

1. The requested rezoning is not consistent with the goals and policies of the Township Master Plan.
2. The current R-1-H is more consistent with the Future Land Use Plan that [sic] the requested R-2-A.
3. The requested rezoning could establish an undesirable zoning trend in the Township, which would undermine the orderly transition of densities.
4. The current R-1-H zoning is more appropriate to the nearby pattern of land division and housing development than the requested R-2-A zoning.

On August 17, 2004, the Township Board accepted the Planning Commission's July 21, 2004 recommendation and denied Bauss's 2003 Application.

On September 30, 2004, Bauss sued the Township and McKenna for violating his due process rights by failing to give him actual notice of the Planning Commission's April 21, 2004 hearing on whether to change the Township's 1993 Future Land Use Map attached to the Master Plan. In making his due process claim, Bauss also said that the correction of the drafting error on the 1993 Plan's Future Land Use Map resulted in the re-zoning of his property. Bauss further complained that the Township and McKenna engaged in a conspiracy to violate his rights by

intentionally denying him specific notice of the April 21, 2004 hearing, and, further, intentionally inflicted emotional distress upon him. The Township and McKenna separately answered Bauss's complaint and moved for summary judgment.

On July 27, 2005, the district court granted Defendants' motions for summary judgment. In its opinion, the district court first considered whether Bauss possessed a protected property interest in any "zoning classification" other than the classification that the property had, i.e., R-1-H (single-family residential). The court found that Bauss did not possess such a protected property interest, noting that "Plaintiff claims to have a property interest in a zoning that never existed. The only property interest Plaintiff has is an interest in the property as he purchased it, R-1-H. This zoning never changed. Therefore, Plaintiff does not have the protectable property interest he claims." Having made this finding, the district court declined to address the issue of whether the Township's procedure afforded Bauss sufficient notice.

The district court then found that Bauss's conspiracy claim failed in the absence of any violation of his constitutional rights.

Finally, the district court denied Bauss's claim of intentional infliction of emotional distress because Bauss failed to show sufficient facts to establish that the Township or McKenna engaged in any "extreme and outrageous conduct" in their consideration of his re-zoning applications.

On August 24, 2005, Bauss timely-filed his notice of appeal.

## II. Legal Standard

On appeal, Plaintiff-Appellant Bauss challenges the district court's grant of summary judgment in favor of Defendants-Appellees, the Township and McKenna. "We give fresh review

to a district court's summary-judgment decision, applying the same familiar standard that district courts apply." *Flaskamp v. Dearborn Pub. Schs.*, 385 F.3d 935, 940 (6th Cir. 2004).

To establish a due process violation in a Section 1983 claim, "plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . ., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000) (citation omitted).

To establish a "conspiracy" under a Section 1983 claim, a plaintiff must first demonstrate a constitutional deprivation. *See, e.g.*, *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). *See also Pillette v. Detroit Police Dep't*, 661 F. Supp. 1145, 1148 (E.D. Mich. 1987).

To claim intentional infliction of emotional distress, a plaintiff must show the defendant engaged in "extreme and outrageous conduct" to "intentionally or recklessly" cause him severe emotional distress. *See, e.g.*, *Ledsinger v. Burmeister*, 318 N.W.2d 558, 561 (Mich. Ct. App. 1982).

### III. Analysis

For the reasons discussed below, we affirm the district court's finding that Defendants-Appellees did not deprive Bauss of his Fourteenth Amendment due process rights, conspire to do so, or intentionally inflict emotional distress upon him.

### A. Bauss Did Not Possess a Property Interest in the R-2-A (Multiple-Family Residential) Re-zoning

We hold that Bauss has failed to establish the violation of any due process right.

-10-

To establish a violation of due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest. *Richardson v. Twp. of Brady*, 218 F.3d 508, 516-17 (6th Cir. 2000). In *Board of Regents v. Roth*, 408 U.S. 564 (1972), the Supreme Court described the kinds of interests protected by the Fourteenth Amendment: "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. The Court explained that the Constitution does not create property interests, but, rather, these interests arise from "existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and support claims of entitlement to those benefits." *Id.*

A party cannot possess a property interest in the potential receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary. *See, e.g.*, *Richardson*, 218 F.3d at 517. If an official has unconstrained discretion to deny the benefit, a prospective recipient can establish no more than an unprotected "unilateral expectation" of it. *Roth*, 408 U.S. at 577.

Thus, before Bauss can establish a violation of due process, he must demonstrate that he had a property interest in the use of the Ann Arbor Trail Property as a site for multiple-family housing. To do this, Bauss must show that the Township Board did not have the discretion to deny Bauss's request to re-zone his land. *See G.M. Eng'rs and Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 331 (6th Cir. 1990). If the Township Board had the discretion to deny Bauss's re-zoning request, then Bauss would not have a "legitimate claim of entitlement" or a "justifiable expectation" in the Board's approval of his re-zoning request. *Id.* (quoting *Roth*, 408 U.S. at 577). Bauss, therefore,

-11-

would have no property right. On the other hand, if state law circumscribed the Township Board's discretion to such an extent that approval of the particular use was mandatory, then a property interest could exist. *Id.*

Under Michigan's township zoning laws, a township board has near complete discretion to deny re-zoning applications.[1] Michigan's Township Zoning Act provided that a township board may provide by ordinance for the establishment of zoning districts. MICH. COMP. LAWS SERV. § 125.271. The Township Zoning Act provided that a township board can consider and approve amending the zoning code to allow for non-conforming use of the land. *See, e.g.*, *id.* at §§ 125.286, 125.286h, 125.286i. A township board properly considers and grants re-zoning requests to allow non-conforming uses if such a grant would meet the purpose of the Township Zoning Act, i.e., "promote the public health, safety, morals and general welfare." *Id.* at § 125.273.

Given the language and intent of the relevant Michigan statutes, we conclude that the law gave the Township Board broad discretion to reject Bauss's 2003 Application. Because the Township Board had broad discretion, Bauss possessed neither a legitimate claim of entitlement to his requested re-zoning, nor a justifiable expectation that the Board would grant his requested re-zoning. Bauss, therefore, possessed no property interest that supports his due process claim.

---

[1] In this analysis of relevant Michigan law, we note that, effective April 10, 2006, the state legislature repealed the statutory sections referred to in this Opinion. *See* Pub. Acts 2006, No. 110. However, the Michigan statutes referred to in this Opinion represent those that bound the actions of the parties at the time Plaintiff-Appellant brought this law suit. As such, we properly rely on the text of the repealed statutes for our current analysis.

We further note that our reliance on these sections of the Michigan code differs from the district court's analysis that considered Michigan's Municipal Planning Code, i.e., MICH. COMPL. LAWS SERV. § 125.36, to come to the same correct conclusion that the Township Board had full discretion to reject Bauss's 2003 application for re-zoning.

The Supreme Court has recognized that property interests may be created in some situations despite the absence of explicit contractual or legal provisions establishing a claim of entitlement. *See Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972). For example, under traditional principles of contract law, "explicit contractual provisions may be supplemented by other agreements implied from the promisor's words or conduct in light of the surrounding circumstances." *Id.* at 602 (quotation omitted). Therefore, Bauss could establish a protected property interest if he could show that the Planning Commission or the Township Board engaged in words or conduct that created an implicit, but nonetheless legally-binding, obligation to grant his re-zoning application.

Bauss has not adduced such facts. The record contains no evidence, for example, that would support a claim that Defendants-Appellees created an implied contract. On the contrary, and as noted by the district court, the record contains proof that the Township properly considered and ultimately rejected Bauss's 2003 Application as "not consistent with the goals as policies of the Township Master Plan." Bauss actively participated in the Township's consideration of his 2003 Application. As a result, Plaintiff-Appellant cannot show that he possessed a cognizable property interest based on any implied agreement by Defendants-Appellees to grant his re-zoning request.

**B. The Township Provided Bauss With Adequate Notice of the April 21, 2004 Hearing**

In his complaint and on appeal, Bauss says that Defendants-Appellees violated his procedural due process rights by failing to give him "adequate notice of the April 21, 2004 Planning Commission meeting in which the Proposed Master Plan Amendment was enacted which re-zoned [Bauss's] property." Bauss cannot complain of a procedural harm before he demonstrates a colorable interest in his request for re-zoning of the Ann Arbor Trail Property as R-2-A (multiple-

-13-

family housing).  *See Richardson*, 218 F.3d at 516-17.

As discussed above, Bauss does not make such a showing.  The Township Board had the discretion to deny Bauss's re-zoning application, which it legally did on August 17, 2004 after providing Bauss with adequate notice and an opportunity to be heard.  Further, no action undertaken by the Township Board or Planning Commission "re-zoned" Bauss's property, either as a matter of fact or law.  The Ann Arbor Trail Property enjoyed R-1-H (single-family residential) zoning at the time Bauss purchased it in 1978 and continued to enjoy that zoning classification when the Township Board rejected Bauss's 2003 Application.  That the 1993 Future Land Use Map mislabeled Bauss's property has no importance on the property's zoning classification.  Thus, Defendants-Appellees undertook no acts that deprived Plaintiff-Appellant of his constitutional rights.

Even if Bauss had been able to show a property interest entitled to protection, his claim fails to show the Township denied him sufficient opportunity to protect his claimed interest.  A brief analysis of relevant Michigan law supports this constitutional finding.  Bauss seems to claim that he should have received personal notice of the hearing on the amendment to the Township's Master Plan.  But Defendants-Appellees did not violate Bauss's due process rights when they did not give personal notice of the Planning Commission's April 21, 2004 hearing.  They followed relevant state law by publicizing notice of the hearing in the March 25, 2004 and April 15, 2004 editions of the *Plymouth Observer* and the notice provided by that state law was sufficient.

Chapter 125 of the Michigan Compiled Laws provides for the creation, organization, powers,

and duties of township planning commissions.[2] MICH. COMP. LAWS SERV. § 125.324. A township planning commission may create a master plan "that shall address land use issues and may project 20 years or more into the future. The plan shall include maps, plats, charts and descriptive, explanatory and other related matter . . .." *Id.* at § 125.327. A township planning commission may also amend the master plan after seeking the input of the township's board and other interested entities. *Id.* at § 125.329. Before adopting any proposed amendment, a planning commission must provide notice and hold a public hearing. *Id.* Michigan law provides for notice of a public hearing on any proposed amendment hearing by publication in a local newspaper:

> [t]he township planning commission shall publish notice of the hearing twice in a newspaper of general circulation in the township. The first publication shall be not more than 30 days or less than 20 days before the date of the hearing. The second publication shall be not more than 8 days before the date of the hearing.

*Id.* at § 125.328(1). After the hearing, the township planning commission may approve the proposed amendment "by majority vote of its membership." *Id.* at § 125.328(2).

Here, the Plymouth Township Planning Commission sought to amend the 1993 Plan's Future Land Use Map to correct a drafting error that mislabeled the Ann Arbor Trail Property's zoning classification as R-2-A (multiple-family residential). After discussing the mislabeling at its public meetings on October 15, 2003 and December 10, 2003, the Planning Commission sent a proposed amendment to the Township Board for its review. The Board sent the proposed amendment to other interested entities, including adjacent communities, governmental entities, and utility companies.

---

[2] The Michigan legislature's repeal of the state's Township Zoning Act on April 2006 did not effect the state's Township Planning provisions that we discuss in this section. *See* MICH. COMPL. LAWS SERV. §§ 125.321-125.333.

-15-

After receiving public comment on the proposed amendment, the Planning Commission publicized notice of the April 21, 2004 public hearing in the March 25, 2004 and April 15, 2004 editions of the *Plymouth Observer*, the community's general interest newspaper, in compliance with Section 125.328(1) of the Michigan laws. After the hearing, the Planning Commission approved the proposed amendment and the Township advised Bauss of the commission's approval.

Contrary to Bauss's complaint, the Michigan statute requires only that the Township's Planning Commission provide notice of amendment hearings by publication. The record shows that the Planning Commission adhered to the requirements of Michigan's law. Consequently, Defendants-Appellees provided Bauss with legally-sufficient notice of the April 21, 2004 hearing.

Courts have examined claims that zoning measures that provide for publication in a local newspaper are invalid and that due process requires actual notice. Examining these arguments, courts have held this contention fails and state zoning statutes need not provide for actual notice. *See, e.g.*, *Wells v. Vill. of Libertyville*, 505 N.E.2d 740 (Ill. App. 1987) (noting that "[i]t has been repeatedly held by Illinois courts that the statutory provisions for notice by publication of zoning ordinance amendment proceedings satisfy the requirements of procedural due process and that due process does not require personal notice of such proceedings to adjacent property owners"); *Lawton v. City of Austin*, 404 S.W.2d 648 (Tex. Civ. App. 1966) (holding that a state's statutory notice provisions ". . . are valid for two reasons[:] . . . first . . . the enactment and amendment of zoning laws is legislative in character and due process of law does not require notice of such proceedings[;] . . . second . . . the notice provisions of these statutes [by publication] are constitutionally adequate even if notice is required."). *See also Nardi v. City of Providence*, 153 A.2d 136 (R.I. S. Ct. 1959).

-16-

Thus, because Bauss lacked a protected property interest in the re-zoning of the Ann Arbor Trail Property and because the Township provided him with sufficient notice of the April 21, 2004 hearing to amend the 1993 Future Land Use Map, Plaintiff-Appellant's due process claims fail.

## C. Bauss's Remaining Claims

Defendants-Appellees did not conspire to deprive Plaintiff-Appellant of his constitutional rights. The district court correctly notes that, to bring a conspiracy claim as against the Township and McKenna, Bauss must first establish that he has suffered a constitutional deprivation. *See also Hooks*, 771 F.2d at 943-44; *Pillette*, 661 F. Supp. at 1148. As discussed above, Bauss fails this proof because he does not demonstrate that he possessed a protected property interest in the Township's master plan or its zoning decisions. Further, the Township provided Bauss with legally sufficient notice of the Planning Commission's April 21, 2004 hearing. Thus, Bauss cannot show that he was deprived of any constitutional right, much less that Defendants-Appellees conspired to so deprive him. Consequently, Plaintiff-Appellant's conspiracy claim fails.

Finally, Plaintiff-Appellant does not show facts sufficient to raise material factual issues in support of his claim of intentional infliction of emotional distress. To state such a claim, Bauss must demonstrate that Defendants-Appellees engaged in "extreme and outrageous conduct" to "intentionally or recklessly" cause him severe emotional distress. *See, e.g.*, *Ledsinger*, 318 N.W.2d at 561. The district court correctly notes that Bauss's complaint fails to show sufficient facts to make a material showing of "extreme and outrageous conduct" on the part of the Township or McKenna. In his attempt to bring this claim, Bauss asserts that Defendants-Appellees conspired to deny him of his property rights. However, as discussed above, Bauss did not possess a protected property

interest and the Township provided him with legally sufficient notice of the Planning Commission's April 21, 2004 hearing. Absent any constitutional deprivation, Bauss cannot establish a case of conspiracy against Defendants-Appellees. Because no conspiracy to violate his constitutional rights existed, Bauss's claim that Defendants-Appellees intentionally or recklessly acted with "extreme and outrageous conduct" toward him fails.

## IV. Conclusion

For these reasons, we **AFFIRM**.